HOOPER P. WINFREY, Respondent, v. SAMUEL LAZARUS, Appellant.

St. Louis Court of Appeals. Argued and Submitted, April 6, 1910. Opinion Filed May 3, 1910.

1. **APPELLATE PRACTICE: Weight of Evidence: Conclusiveness of Verdict.** The appellate court will not determine whether the verdict is against the weight of the evidence; that being a matter for the trial court.

2. **MASTER AND SERVANT: Injury to Third Person by Servant: Evidence Held Sufficient to Show Servant's Authority.** In an action for personal injuries caused by the collision of plaintiff's buggy with defendant's automobile, driven by his chauffeur, evidence *held* to show that the chauffeur was acting under defendant's authority and within the scope of his employment when the accident occurred.

3. ———— ————: **Liability of Master.** An employer is liable for damages caused by his employe's negligence while acting in the scope of his employment, though the negligent act was not necessary to the performance of his duties, nor expressly authorized by or known to the employer.

4. ———: ———: **Automobile Colliding With Buggy: Instructions: Instruction for Plaintiff Approved.** In an action for personal injuries caused by the collision of plaintiff's buggy with defendant's automobile, driven by his chauffeur, the court

instructed that if plaintiff's buggy was run into by an automobile operated by one employed by defendant, who was then operating it in the course of his employment and who negligently operated it at a speed greater than was reasonable, in view of the traffic and use of the highway, or so great as to endanger life and limb, and plaintiff's injury was directly due to his negligence, the jury should find for plaintiff. *Held*, the instruction was correct.

5. ———: ———: ——: ———: **Inconsistent Instructions.** An instruction that if the automobile was in the chauffeur's charge at the time of the accident but had been taken out by him at the request of defendant's married daughter, not a member of his household, for her own use, and not on defendant's business, the jury should find for defendant was not inconsistent with the previous instruction, so as to warrant the conclusion that the jury disregard it in finding for plaintiff.

6. **APPELLATE PRACTICE: Instructions: Given at Complaining Party's Request.** A party will not be heard to complain on appeal of an instruction given at his own request.

7. **DAMAGES: Excessive Verdict.** In an action for personal injuries and damage to a buggy caused by a collision between said buggy and an automobile, a verdict in plaintiff's favor for $800 is *held* not to be so excessive as to warrant interference on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*W. E. Fisse* for appellant.

*Kinealy & Kinealy* for respondent.

STATEMENT.—The defendant in this case, with his wife, left their home in St. Louis about the 12th of June, 1908, for a trip to Europe, on the day of the accident, June 25th of that year, being in Germany. Defendant was the owner of an automobile and he had in his employ as chauffeur one Conley, who was left in charge of the machine and under pay of the defendant during the absence of defendant. The machine seems

to have been kept at the premises of defendant, Conley not living there, however, but at his own home. The residence of defendant, during the absence of defendant and his wife, was in charge of defendant's sister-in-law, the house servants being left there and the house apparently being run in the ordinary way. Mrs. Baker was the married daughter of the defendant. While defendant was absent she appears to have stayed a good part of the time at her father's house with her child. She and her husband, however, had their own place of residence in St. Louis, but on the day of the accident and apparently for some little time before and afterwards, her husband being absent, Mrs. Baker appears to have taken up her residence at her father's house. On the day of the accident, June 25th, she was down town taking lunch with some friends at a store and telephoned to her father's house to have the machine sent down and meet her at the store. This message was conveyed from the house to Conley, the chauffeur, also apparently by telephone, whereupon he proceeded to drive the machine down to meet Mrs. Baker. While on the way down town he ran into the plaintiff's buggy, in which at the time plaintiff was riding, breaking the buggy, throwing plaintiff into the street and, as he claims, injuring him quite severely. He brought suit against the defendant for damages for the injuries sustained, laying them at $15,000.

Defendant, after a general denial, pleaded contributory negligence on the part of plaintiff, averring that the automobile mentioned in the petition was operated with all due and proper care to avoid any collision with the vehicle of plaintiff and that plaintiff could have avoided the accident by the exercise of reasonable care and diligence on his part.

The reply was a general denial and the trial was before the court and jury.

Plaintiff and several of his witnesses testified to the accident, describing the speed of the respective

vehicles and the place where the accident occurred, there also being evidence as to the nature and extent of the injuries sustained by the plaintiff. Plaintiff also introduced the deposition of Mrs. Baker, who testified that during the absence of her father and mother in Europe, she had lived at her father's house part of the time, going there with her child, her husband being out of town. During the time that she stayed at her father's house she had used the automobile several times; doesn't remember how often; used it whenever she cared to do so; no one had ever interfered with her use of the machine; her father did not tell her that she could use it if she wished to; used the machine prior to the departure of her father just as she did afterwards; whenever she wanted to use it she used it. The only difference in her use of it after her father left was that she did not use it so often; nothing was said one way or the other in the way of placing any restraint on her use of it. Remembers the occasion of Conley bringing the machine to meet her down town on the 25th of June, 1908. When he came down and met her, he told her that he had been in an accident with the machine. Mrs. Baker said she was lunching down town that day with some friends and asked one of the waiters to telephone out to the house to tell Conley to come down after her; just gave the telephone number to the clerk at the store and told him to give the message to whoever answered the telephone. The chauffeur accordingly came down and met her. Asked who was employed in her father's house as servants at that time, she answered, "Why, I'm not sure. I don't know just who it was. I had two girls there just about that time; one left, and then the other one came." Remembered their first names but not their last names.

The deposition of defendant had also been taken and was introduced and read in evidence on the part of plaintiff as admissions by defendant against himself. In answer to the question by counsel for plaintiff in

his direct examination, as to whether his daughter ever used the machine prior to the day of the accident, defendant answered that she did. Asked under what conditions, he said he didn't know. Asked if she used it by herself, he answered, "That I don't know. The machine is her mother's machine; and if you had a daughter you would find out that she used what you had." Asked if he knew that his daughter used it, he answered that he had seen his daughter out riding many times in the machine; that she used it "either with her mother or her auntie, or somebody," and he never paid any attention to it; had never objected to her using the machine; did not object to her asking the chauffeur to bring the machine down to her at the store on the day of the accident after he had heard of it; had never told her anything about the use of the machine; never told her "she could or she could not. She has got the habit of picking up what she wants and going off with it." If she would use it he could make no objection to her use of it any time she wanted to, going wherever she wanted; had no objection at all. He further testified that during his absence in Europe, the machine was under the control of Conley, the chauffeur. Conley was not subject to anybody's direction. He had charge of the machine while defendant was gone and he had told him to go down to the office and get his money every week and defendant's secretary paid him every week. Asked if Mrs. Baker instructed him to go out, he didn't have to go unless he wanted to, he answered, "Well, I guess he would have a mind to." Asked was it the intention that he was to mind Mrs. Baker, he said, "Well, I didn't speak about it at all. I supposed they would run it just like they had always run it, and he would take the machine out." Asked if he would take the machine out on the instructions of the women of the family, he answered that he "supposed so." Defendant was present while this deposition was read on the part of plaintiff and afterwards, being examined as a witness

in his own behalf, he testified that Mrs. Baker was not living at his house when he went away; was not then a member of his household. She lived in her own home on Lindell Avenue; was married; she and her husband have always kept their own house. When he left for Europe, defendant testified, he left the machine in charge of the chauffeur, like he always left it when he went away; nothing was said or done at that time with respect to the use of the machine by Mrs. Baker or anybody else. There was no understanding between him or Mrs. Baker or her husband, that Mrs. Baker should go and live at his house any time during his absence from the city. After he left the city Mrs. Baker had gone over to his house and stayed with her aunt for a couple of weeks, maybe three weeks. Asked if that was by reason of any understanding between them, he answered, "No, just as a daughter, she went over, and I guess she had a right to go if she wanted to. But she is always in her own house ever since she was married. She always is." On cross-examination, asked if the aunt had supervision of the house and the grounds and the automobile, he said: "No; she had nothing to do with the automobiles." Asked if she had no right to instruct the chauffeur about the automobiles, he answered, "She seldom gets into an auto. It is hard to get her in it. She don't have anything to do with it." Conley was supposed to take care of the machine and keep it in order for the defendant; did not tell him about receiving instructions from anybody about taking it out; just left him in charge of the machine. Conley had no authority from him (defendant) at any time to take anybody he wanted to. Asked how often Mrs. Baker had used the machine prior to the trip of defendant to Europe, he said he didn't know; didn't know whether she had ever used it; was of the opinion that she had but didn't know; had never seen her in the machine by herself; had seen her in it with her mother; had seen her in the machine with her husband and her

mother and the "whole bunch of them" would come down after him. The machine carries six people. Had never known his daughter to order the chauffeur to get the machine and bring it to her. Conley was in his employ for about a year and a half prior to the accident and while he was in Europe. Conley had never lived on defendant's premises but stayed around the garage, took care of the machine and his duty was to be there when anybody wanted him. Did not tell Conley anything about using it while he was gone, just said, "there is the machine. Go down and get your money every Saturday night from Charlie." Didn't give him any instructions one way or the other; left the machine in his charge and went off. All the instruction he gave him was, "Pat, take care of this machine and behave yourself, and go down and get your money every Saturday night." This was practically all the evidence in the case touching the ownership and control of the machine on the day of the accident. There was conflict of testimony as to the rate at which the two vehicles were going, as to who was in fault, and as to the extent of the injuries sustained by plaintiff.

At the instance of plaintiff the court instructed the jury that if they believed from the evidence that the plaintiff's horse and buggy were run into by an automobile, then and there in control and being operated by one Pat Conley, and that said Conley was then in the employ of the defendant for the purpose of operating said automobile and was then and there operating the same in the course of said employment, and that he ran it at a rate of speed so high that because of the weight and size of the automobile and character of the street at the place or that he was then and there negligently operating the machine at a rate of speed greater than was reasonable, having regard to the traffic and use of the highway or so great as to endanger life and limb, and the injury to the plaintiff and his horse and buggy was directly due to the negligence on the part of Con-

ley, they should find for plaintiff. The court also instructed the jury as to the measure of damages. These were objected to by defendant and exceptions saved. A number of instructions were given at the instance of defendant, among others, one marked No. 3, which was to the effect that if the jury believed from the evidence that the automobile at the time being driven by Conley was in his charge but defendant and his wife were absent in Europe and that at the time of such injury the automobile had been taken out by said Conley at the direction and request of Mrs. Baker, a married daughter of defendant, not a member of his household, for her own use and on her own business and not for any business of the defendant, they should find for the defendant. It is not necessary to notice the other instructions.

The jury returned a verdict in favor of plaintiff for eight hundred dollars, from which defendant has appealed, filing a motion for new trial and duly saving exceptions.

REYNOLDS, P. J. (after stating the facts).— The errors assigned by counsel for the appellant are, that the verdict is against the weight of the evidence and is not supported by any evidence; that the instructions given by the court at the instance of plaintiff, especially the first, were improper and that the instructions were inconsistent; that under the third instruction given at the instance of defendant, a verdict should have been returned in favor of the defendant, and that the amount of the finding in favor of plaintiff is excessive. Whether the verdict is against the weight of the evidence, is a matter for the determination of the trial judge and not of this court. Counsel contend that the verdict is not supported by any evidence. We have set out the substance of the evidence on the issue as to whether, at the time of the accident, the machine was being operated by one who, at the time, may be said

to have been acting under the authorization of the defendant and within the scope of his employment. We do not think it can be said that there was no evidence whatever to sustain the verdict, so far as involves that issue. We think the evidence which we have set out clearly shows that the case was one for the jury and that its determination rests entirely upon the conclusions that the jury might properly draw from it, determinable by them also on the credit that they gave to the witnesses.

The principle underlying the determination of cases of this character is well set out by Judge NORTONI in the case of Shamp v. Lambert, 142 Mo. App. 567, 121 S. W. 770, where at page 772 of the last cited publication, it is said, in substance, that the employer is liable for all injuries to person or property caused by the negligence of his employee, if the act which results in the injury is done while the employee is acting within the scope of his employment in the employer's service, though the act was not necessary to the performance of the employee's duties and it was not expressly authorized by the employer or known to him. Judge NORTONI, citing many cases supporting this, quotes from Garretzen v. Duenckel, 50 Mo. 104, that "when the servant acts in the course of his employment, although outside of his instructions, the master will be held responsible for his acts," referring also to Snyder v. Railroad, 60 Mo. 413, in which the foregoing excerpt from the Garretzen case is quoted approvingly. It seems very clear to us from the evidence in this case, that the chauffeur, Conley, was acting in the course of his employment by the defendant when he obeyed the direction of the defendant's daughter to bring the machine down for her use. The defendant, by his own testimony, shows beyond room for doubt that when he went on his journey he left this machine for the convenience and at the service of the members of his household. He said, in effect, he did not want to discharge Conley because good chauffeurs

were not easily picked up. But he did more than merely retain Conley in his employ,—he left him in charge of the machine, obviously intending it to be used. He says that they rarely got his sister-in-law to use it. "She seldom gets into an auto. It is hard to get her into it." So there was no one left but his daughter who would be apt to use it. He surely contemplated that she should use it and that Conley would drive it when she did use it. She was the daughter of the defendant, and, for the time being, an inmate of his household, with all the privileges of a daughter in the home of her parents. When defendant was informed of her use of his machine, on his return from Europe, and of the fact of the accident having occurred, according to his own testimony, he made no objection or protest whatever, nor any suggestion that Conley should not have obeyed the demand of the daughter, or of lack of authority in his daughter to control the use of the machine. The facts before the jury unmistakably tended to prove that the chauffeur understood that he was at the direction of the daughter and when he received word from her to come down town with the machine for her, he, without any hesitation, obeyed. The testimony of the daughter even goes so far as to tend to show that she was so far mistress of the household that the servants in the house were under her control. She referred to them in this way, when asked who they were: "I had two girls there just about that time; one left and then the other one came." With testimony of this character before them, the jury had a right to infer that the chauffeur, in bringing the machine down from the garage to the point to which he had been summoned by Mrs. Baker, was acting in the course of his employment, and within the scope of his employment, although he had no specific instructions from his employer to do this particular act or to make this particular trip. The acts of the daughter, the whole trend of her testimony and that of her father, warranted the jury in

finding that the daughter was a member of the household of the defendant; the testimony of the daughter and of the defendant tended to prove that this machine was subject to the control and for the use of the members of the household of the defendant, and that when the chauffeur obeyed any of them in the use of it he was act- ing within the scope of his employment.

The learned counsel for the defendant cites authori- ties in support of his contention that the employer is liable only when the employee is acting within the scope of his employment. We not only do not dispute that, but recognize it as the law. When, however, he attempts to argue that this chauffeur was not acting within the scope of his employment and for that relying particular- ly on the case of Clark v. Buckmobile Co., 107 N. Y. App. Div. 120, we do not agree with him nor do we think this authority meets the case at bar; it is not anal- ogous, in its facts, to the case at bar.

The first instruction, of which we have given a suffi- cient synopsis to show its import, was correct and is not subject to the assignment of error levelled against it. Neither do we think that there was any inconsistency in the instructions, which we assume is meant to apply to defendant's third instruction as contrasted with the first one given at the instance of plaintiff. We do not think instruction numbered three is inconsistent with number one, or of such a character as to lead to the conclusion that the jury by their verdict, entirely disregarded it. The jury are told by that instruction, in substance, that they are to find for the defendant unless they find that at the time of the use of the ma- chine by the direction of the daughter, the daughter was a member of the household of the defendant. That very properly left it to the jury to determine whether the daughter was or was not a member of the household of the defendant. If the jury, on the evidence, found that she was such member, it cannot be said that their verdict was in disregard of this instruction. If the

clause referred to, requiring the jury to pass on the question of whether the daughter was a member of the household, had been omitted from this third instruction and the instruction given with that omission, it would have been unmistakably and clearly error. Even as it is, without the aid of the instruction given at the instance of plaintiff, its tendency was to minimize in the minds of the jury the real point in issue, that is, the determination of whether the daughter was a member of the household of the defendant when she ordered the machine to be brought down for her service. It put that issue before the jury in the most extremely favorable light possible for the defendant. The defendant cannot complain of it as it was his own instruction and he surely has no ground to complain of it for failing to give him the benefit of his defense.

As to the proposition made by the learned counsel for the defendant, that there is no evidence to support the allegations of negligence on the part of the defendant's employee and that the verdict is excessive, it is to be said that while it is true that there was contradictory evidence to that of plaintiff on the part of the defendant as to the rate of speed and as to the care and caution exercised respectively by the chauffeur and by the plaintiff and also conflicting evidence as to the extent of the injury and damage to the plaintiff, the jury were properly instructed on these matters and the weight to be given to this testimony was entirely within the province of the jury. We see no error to the prejudice of the defendant in the record and do not consider the verdict so excessive as to warrant interference by us on that account. The judgment of the circuit court is affirmed. All concur.