## HARRY O. BRAWNER *v.* DAISY A. HOOPER.

*Automobile Collision—Concurring Negligence of Two Persons*
*—Loan of Car and Chauffeur—Employer's Liability—*
*Evidence—Misconduct of Juror—Waiver of Objec-*
*tion—Excessive Verdict—Remittitur on Con-*
*dition—Abandonment of Exceptions.*

In an action for an injury to plaintiff, as a result of defendant's car striking the car in which plaintiff was riding, after the latter car had been struck by a third car and pulled around by it across the road, defendant's prayer that, in the absence of evidence that the accident was caused "solely" by the wrongful act or neglect of defendant's driver, plaintiff could not recover, was erroneous, since it was sufficient for plaintiff to show that such driver's negligence, concurring or combined with the negligence of the driver of the third car, caused the accident.

p. 584

Where the negligent acts of two or more persons other than the plaintiff, and not imputable to him, acting independently, combine to produce the injury complained of, no one of them can escape liability on the ground that his negligence was not the sole cause of the injury. p. 584

Defendant, who loaned his automobile and chauffeur to another for the purpose of a drive, *held* not free, as a matter of law, from liability for the chauffeur's negligence during the drive, this being a question for the jury, as depending on whether defendant or the borrower had control of the chauffeur.
                                                    pp. 585-591

That defendant testified that he had no control over the chauffeur while the car "was in the possession of" the borrower was not decisive, this being a mere conclusion by him upon the very issue to be decided by the jury, and whether the car was "in the possession" of the borrower or of defendant being also a question of fact for the jury.                    p. 587

There was no conclusive legal presumption that the driver of an automobile, loaned with it to another, for the purpose of an afternoon's drive, became the servant of the borrower, and ceased for the time being to be the servant of his general employer.                                            p. 588

On an issue as to whether defendant, having loaned his car and chauffeur to his mother-in-law for a Sunday afternoon drive, retained control of the chauffeur, so as to be liable for the latter's negligence, questions asked defendant as to what instructions he had given the chauffeur as to taking out his mother-in-law on that day, and as to the direction of the drive, were relevant, but their exclusion was not prejudicial, he having testified that he gave no instructions as to taking her out, and it appearing that the chauffeur took her out on that day in accordance with a general understanding.                    p. 592

Also questions asked defendant as. to what interest he had in his mother-in-law's trip that afternoon, and whether the car was being used for his benefit or pleasure, were improperly excluded, but their exclusion was not prejudicial, since it was obvious from the evidence that he loaned the car to his mother-in-law for her benefit and pleasure, and that his only interest in her use of it was a desire to extend her a courtesy.    p. 592

Defendant was not injured by the striking out of a witness' statement as to a fact contributing to the accident, if this fact was self-evident on the assumption that defendant's own witnesses testified truthfully.                                            p. 593

A party to a suit, with whom a juror improperly communicates, before the jury retires to consider their verdict, cannot reserve his complaint of such misconduct until after a verdict against him.                                    p. 594

Conduct by court and counsel prejudicial to appellant cannot be considered on appeal, if no objection was made at the time.                                                    p. 594

The Court of Appeals will not review the action of the trial court on a motion to strike out the judgment on account of misconduct of the court and counsel and the excessive amount of the verdict.                                      p. 594

The trial court may properly grant a new trial unless the plaintiff remits such part of the verdict as it regards as excessive, but in passing such an order the court cannot annex a condition that the defendant shall not receive the benefit thereof unless he abandons his right of appeal.          pp. 594-597

*Decided December 6th, 1926.*

Appeal from the Supreme Court of Baltimore City (STEIN, J.).

Action by Daisy A. Hooper against Harry O. Brawner. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., ADKINS, OFFUTT, DIGGES and PARKE, JJ.

*Edward L. Ward,* with whom was *Edwin W. Wells* on the brief, for the appellant.

*Charles C. Wallace* and *Edward Hopkins Hammond,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment for the plaintiff in the retrial of the case of *Hooper v. Brawner,* 148 Md. 417.

The case grows out of a collision between an automobile which was at the time of the accident owned by the appellant

and driven by his chauffeur, and another one, in which the appellee was a passenger and which was at that time driven by her husband.

In the course of the trial the plaintiff offered evidence which tended to show these facts, which for convenience we will state in narrative form. The car in which appellee was riding was, between one and two o'clock in the afternoon of Sunday, June 17th, 1923, proceeding westerly along the Frederick Road at a point near Cooksville, when it approached another automobile parked on the south side of the road facing east and entirely off of the macadam. The road at that point is about thirty feet wide, of which the center or macadam part is about twelve or fourteen feet wide with broken and irregular edges. There is a dirt shoulder or way eight or nine feet wide on either side, and the grade slopes downward towards the east. As the appellee's car, a Dodge, approached the parked car, a Haynes, another automobile, a Buick, coming east, swung out of its course to pass the Haynes, collided with the appellee's car, hooked its left rear wheel in the left front wheel of appellee's car, and pulled it around across the road at an angle of about forty-five degrees, so that it finally came to a stand still about a foot from the parked car. While it was in that position appellant's car, a Kissel, coming east, at about fifty or fifty-five miles an hour, struck it on the right side and injured the appellee. There was also evidence that the driver of the appellant's car, "slid the wheels" thirty-seven feet before it struck the appellee's car, that it struck appellee's car "behind where the front fender goes onto the running board, between that and the back, driving his radiator and headlights and wheels all underneath, also driving the body through, tearing the running board and fender off," and there was evidence that there was "plenty of space between the rear of the Dodge car and the north side of the road," and that the situation of the Dodge car could have been seen by one approaching from the west for a distance of at least three hundred feet.

When the accident occurred appellant was not present, but

his automobile was occupied by Mrs. Eleanor Brannan, his mother-in-law, and her two nieces, the Misses Winsett, under the following circumstances: At that time Mr. Brawner lived at the Baltimore Country Club, and his car was kept at the Roland Park Garage. Mrs. Brannan, the mother of his deceased wife, lived at the Geneva Apartments, and Mr. Brawner was accustomed to place his car and chauffeur at her disposal whenever she wanted it. And she, to quote her testimony, "used to go out in it every Sunday afternoon, because he never used the car on Sunday afternoon," she used to go out "just take a ride," and on the "afternoon in question" the chauffeur brought it "as usual," and when they started she said to him, "We will take a nice ride," and that is all she said to him, because "of course, he knew we wanted to go in the country somewhere." And he, without any further direction, drove out the Frederick Road, although, because of the heavy traffic, Mrs. Brannan did not care particularly for that drive on Sunday afternoon. She was accompanied by her two nieces, whom she had invited for the drive. Mr. Brawner did not know that they were going or where they were going, nor does it appear that she herself knew. In his own behalf Mr. Brawner said that he loaned her the car, on "that Sunday," although he did not recall whether she asked specially for it on that occasion, because such a request was not necessary; "she had the privilege of driving the car when she cared to without any—in fact, without any instructions from me whatsoever. She had the privilege of using the car when it was convenient for her to do so." That he loaned the chauffeur with the car, but gave him no instructions as to taking Mrs. Brannan out, in fact he had no conversation with him at all on that occasion, and to the best of his recollection did not see him before he left "for Mrs. Brannan's," and that he had no direction or control over the chauffeur "while the car was in the possession of Mrs. Brannan." It was understood that the chauffeur would drive the car to her house on Sunday afternoons and he apparently did that as a matter of course, without any request from Mrs.

Brannan or special direction from Mr. Brawner. This is in substance the testimony relevant to the first ten exceptions presented by this appeal.

Of these ten exceptions, nine relate to the rulings of the trial court upon questions of evidence and one to its rulings on the prayers. The plaintiff offered four prayers, of which the court refused three and granted the fourth, which related to the measure of damages. The defendant offered nine prayers, of which the first three were refused and the others granted. The defendant's first prayer was a demurrer to the evidence and, if appellant was answerable for the negligence of his chauffeur, was in our opinion properly refused. There was in the case some evidence from which the jury could have inferred that the accident was occasioned by the negligence of the appellant's chauffeur, and the weight of that evidence was for the jury to determine. By his third prayer he sought to have the jury instructed that there was no evidence legally sufficient to show that the accident was caused "solely by the wrongful act, neglect or default of the defendant's driver," and that in the absence of such evidence the plaintiff could not recover. That prayer was obviously erroneous, because the plaintiff was not obliged to show that the accident was occasioned "solely" by the negligence of the defendant's chauffeur; it was enough if she showed that his negligence, concurring or combined with the negligence of the driver of the Buick car, caused it, and there was unquestionably evidence in the case from which that inference could have been drawn. *Cooley on Torts* (3rd Ed.), 248, etc.; *Leland v. Empire Engineering Co.,* 135 Md. 218. Where the negligent acts of two or more persons other than the plaintiff, and not imputable to him, acting independently, combine to produce the injury complained of, no one of them can escape liability on the ground that his negligence was not the sole cause of the injury.

The principal question raised by the appeal, however, is presented by the refusal of the defendant's second prayer. By that prayer the appellee asked the court to instruct the

jury, "that as it appears from the uncontradicted evidence in this case that the automobile of the defendant was loaned by him on the occasion in question together with the driver thereof to Mrs. Brannan for her personal pleasure and use, and that at the time of the accident in question said automobile was being operated solely for her pleasure and benefit, and that the defendant had no control or direction over said automobile or the driver thereof, their verdict must be in favor of the defendant." The only difference between that prayer and the defendant's second prayer in the case of *Hooper v. Brawner, supra,* is that in this case the prayer states as a matter of law that the defendant had no control or direction over said "automobile or the driver thereof," while in the former case the prayer stated that the defendant had no control or direction over "said automobile." Counsel for the appellant, however, contend with unusual force and earnestness that under the evidence in this case that prayer should have been granted, notwithstanding that in the former appeal this court disapproved it. That contention is based upon the assumption that the evidence in the present case supplies proof, which was wanting at the first trial, that the defendant's automobile and the driver thereof were not at the time of the accident under the control and direction of the defendant. But we are unable to agree with that contention. The issue tendered by that prayer was whether in operating the car at the time of the accident appellant's chauffeur was acting within the scope of his employment and subject to appellant's control and direction. The only evidence on that question at the former trial was that of Mrs. Brannan, and the only evidence relating to it at this trial was that of Mrs. Brannan and Mr. Brawner. Mrs. Brannan's testimoney as to it was substantially the same at both trials, and Mr. Brawner in his testimony in this case added nothing to the legal effect of her testimony in the first trial. Mrs. Brannan in the first trial of this case said that on the day of the accident Mr. Brawner loaned her his car and chauffeur; that Mr. Brawner was not present; that she frequently borrowed the car from him; that whenever she wanted it he loaned it

to her; that the trip was for pleasure, and that Mr. Brawner had no interest in it; and that he employed and paid the chauffeur. To that, in testifying in this case, she added that it was generally understood that the chauffeur would bring the car down on Sundays, and that he brought it as usual on "that Sunday afternoon," that she used to go out every Sunday afternoon, "just take a ride," because Mr. Brawner never used the car on Sunday afternoons, that she did not send for the car, and gave the chauffeur no directions as to the route other than that she would "take a nice ride." Mr. Brawner testified that he did not recall how Mrs. Brannan got the car "that afternoon," that he gave the chauffeur no directions to take Mrs. Brannan out, and that he did not recall having seen his chauffeur at all on that day before he went to Mrs. Brannan's, and that he had no control or direction over him, "while the car was in her possession." From this testimony it may be inferred that Mr. Brawner, as a courtesy to Mrs. Brannan, was accustomed to send his car and chauffeur to her residence on Sunday afternoons to take her and such guests as she chose to invite for a drive. There is no positive evidence that Mrs. Brannan had the power to select the route, or that she ever attempted to exercise any such right, nor does it appear that she had or attempted to exercise the right to direct the chauffeur in the operation of the automobile. She was merely a passenger in an automobile loaned to her by her son-in-law for her pleasure and recreation, but operated by his chauffeur, who in fact received no instructions or directions from her as to the manner of its operation, or the route of the drive. It is patent that, in operating the car under such circumstances, the chauffeur was acting either as the servant of Brawner or as the servant of Mrs. Brannan, and it is equally clear that he at the time of the accident was in the general employ of Brawner, who hired him, paid him, and had the power to discharge him or continue him in his service. The only question open then is whether the evidence to which we have referred is sufficient to establish the presumption, as a matter of law, that, when the accident happened, the chauffeur was the special

servant for the time of Mrs. Brannan, and that she had the
exclusive power to control and direct him in the operation
of the car. Upon the evidence in the former case in respect
to that question this Court said: "It was incumbent upon the
defendant, in order to break down the presumption that he
was responsible, arising from the fact that the negligent act
was done by his servant in the operation of an instrumental-
ity owned by him, to show affirmatively as a matter of fact
that he had not at the time of the accident the right to con-
trol or direct the servant, and we do not think it can be con-
clusively said as a matter of law that he has met that burden
by the bare statement that he had 'loaned' the servant to an-
other. He must go further and show that when he loaned
him he surrendered to the borrower the right to control and
direct him." And what was said there we think applies with
equal force to the evidence in the present case. For it can
hardly be said that Mr. Brawner's assertion that he had no
direction or control over the chauffeur while the car was "in
the possession of Mrs. Brannan" finally decided the ques-
tion. Because in the first place, that was a mere conclusion
drawn by the witness upon the very issue which the jury
were required to decide, predicated either upon facts proved
in the case which they alone were empowered to consider, or
upon facts not disclosed and which should not therefore have
been considered at all. In the second place, whether at the
time of the accident the car was in the "possession" of Mrs.
Brannan, or of Mr. Brawner through the agency of his chauf-
feur, was a question of fact for the jury, to be decided upon
a consideration of all the evidence, but which could not be
conclusively determined by Mr. Brawner. We said in *Hooper
v. Brawner, supra*: "To relieve the master from liability for
the act of a servant loaned to another, it is necessary that it
should appear from direct testimony or as a necessary infer-
ence from the circumstances of the transaction that the serv-
ant was during the period of the loan under the control of
the borrower and not under the control of the master." And
in our opinion, there is nothing in the direct evidence found
in the record, or in the circumstances of this case, to justify

us in holding as a matter of law that appellant met that
burden, and that at the time of the accident the appellant's
chauffeur was under the exclusive control and direction of
Mrs. Brannan. While the legal effect of precisely such evi-
dence as that to which we have referred had not, prior to
*Hooper v. Brawner, supra,* been before this Court, it had
been considered by other courts, and we know of no decision
which goes to the length of holding that it raises a conclusive
legal presumption that a driver, "loaned" with a car, under
the circumstances of this case, becomes the servant of the
borrower, and ceases as to the operation of the car during the
time it is used for the borrower to be the servant of his gen-
eral employer, for whose negligent acts done within the scope
of his employment the general employer is answerable. In
proceeding from the garage to Mrs. Brannan's residence, and
in returning from her residence to the garage, the chauffeur
was obviously acting within the general scope of his employ-
ment as the appellant's servant, under an understanding and
a custom which the appellant had sanctioned and permitted,
and, presumably, at some time originated. And it may be
inferred that, when Mrs. Brannan actually occupied the car,
he was, in driving her, still acting within the scope of his
employment as Mr. Brawner's chauffeur, because, so far as
the record discloses, she actually exercised no more control or
direction over the route of the drive or the operation of the
car after she entered it than she had before, nor is there any
positive or conclusive evidence that she had the right to exer-
cise such control and direction.

Without referring again to the authorities cited in *Hooper
v. Brawner, supra,* reference may be made for purposes of
illustration to the following cases, in which the phase of the
relationship of master and servant under consideration here
has been considered.

In *Pease v. Gardner,* 113 Me. 264, an automobile and
chauffeur were hired by others to take a speaker on a speak-
ing tour in a political campaign. The car was for his use,
to be returned when he was through with it, and was to go
on such routes and such places as he directed, although he

did not direct its operation. In speaking of the relations thus created the court said: "Under these facts it is clear that no liability rested upon Mr. Gardner. He had nothing to do with engaging the car. He was simply one of the passengers for whom the car was engaged, and although it was put in his charge during the trip, so far as directions to the chauffeur were concerned as to the route to be taken, that did not create the relation of master and servant between them. It was as if the owner of a car should invite a friend to ride, without the owner accompanying him, and instruct the chauffeur to go wherever the friend might direct. The chauffeur would still remain the servant of the owner, and the friend would still be merely the passenger for whose pleasure or convenience the ride is taken. That was the situation here so far as Mr. Gardner was concerned. He was not the master in any sense and Herrick was not his servant."

In *Winfrey v. Lazarus,* 148 Mo. App. 388, the owner of an automobile went to Europe leaving his automobile in charge of his chauffeur. Prior to his absence he had allowed his married daughter to use his car and chauffeur when she so desired, and he appears to have assumed that the same arrangement would continue in his absence. While he was away, his daughter, temporarily residing at his home, telephoned to have the car meet her at a certain store in St. Louis. While on his way to meet her, defendant's chauffeur ran into the plaintiff's buggy, throwing him out and injuring him quite severely. In an action against the owner, it was held that the servant was at the time of the accident acting within the scope of his authority as the servant of the defendant.

In *Freeman v. Green* (Mo. App.), 186 S. W. 1166, it was held that: "Defendant's chauffeur, in driving defendant's limousine for the convenience of defendant's son-in-law, who had been accorded the privilege of using the automobile for his own business or pleasure when it was not being used by defendant, was acting within the scope of his employment, and defendant was liable for his negligence." And in deciding that the court said: "The chauffeur, defendant's servant,

was merely following the general directions of his master in driving the machine for the benefit of a member of the master's household. No one can doubt that in so doing the chauffeur was acting within the scope of his employment, and that defendant must respond for any actionable negligence on his part, while in the performance of such duties."

In *Janik v. Ford Motor Company,* 180 Mich. 557, 52 L. R. A. (N. S.) 294, cited by the appellant, it was held that the defendant was not responsible for the negligence of a chauffeur which it had furnished to drive a car which a customer had bought and paid for, through the business part of a city, where it appeared that the owner, who was an experienced driver, and himself a dealer, accompanied the driver, and had the right to control and direct his operation of the car, and the case turned upon those facts. But in considering the effect of proof that the person who owned the instrumentality causing the injury complained of also employed the person who operated it, the court in that case said: "One of the important considerations involved in this class of cases is the ownership of the equipment, appliance or instrumentality with or in relation to which the temporary service out of which the alleged injury arose is performed. If it be the property of the general master who has loaned or hired the servant, there is a stronger reason, followed by a greater presumption, that he should and would retain in whole or in part the control and right to dictate and direct its use in carrying out the work. While not always controlling, this has often been recognized as sufficient to turn the scale in otherwise doubtful cases, particularly in that line of special service relating to transportation, or carrying of persons and property." Certain general expressions from *Huddy on Automobiles* and *Berry on Automobiles* are cited in support of appellant's contention, but an examination of the context of those statements will show that they are entirely consistent with the conclusion we have reached. For instance, Huddy, sec. 724, says: "In the case of the loan of a vehicle liability is not imposed on the owner merely because the driver of

the machine is in his general employ," which is quite true, but of little help, because the test recognized everywhere is not whether the servant was in the general employment of the owner, but whether the owner had the power to control and direct his movements at the time of the tortious act, and whether each act was within the scope of his employment. And Huddy in the next sentence recognizes that when he adds: "On the other hand, a general employer is not freed from responsibility for the negligent acts of an employee merely because the employee has been hired out to a third person to be used by the latter in the performance of his work." Nor are the cases cited to support such general statements always in point, for in the same work in support of the statement (section 777) that "where a motor vehicle is loaned or hired to another, except possibly in some cases where the owner furnishes both the machine and the driver, the owner is not liable for the negligence of the person operating the machine," the author states that in *Pease v. Gardner, supra,* the "speaker" (Gardner) was only a passenger and could not direct the route to be taken, whereas the court in that case found that he was in charge of the car and could direct the route to be taken. The case of *Dunmore v. Padden,* 262 Pa. 436, can hardly be considered in point, for in that case the chauffeur had been loaned to the owner of the car and he loaned it and the borrowed chauffeur to another, and expressly directed the chauffeur to take his orders for its operation from the borrower. After a careful consideration of all the evidence and the authorities to which we have referred, we have reached the conclusion that the prayer under consideration and defendant's first prayer were properly refused.

No objection was urged in this court to the granting of the plaintiff's fourth prayer, which related to the measure of damages, and as it appears to be a correct statement of the law in that respect, it follows that in our opinion the rulings of the court involved in the tenth exception are free from error.

This brings us to the rulings upon the admissibility of evidence. In the examination of the appellant, he was asked what instructions if any he had given his chauffeur "with reference to taking Mrs. Brannan out" on the day of the accident, and had replied that he had given none. He was then asked whether he had instructed the chauffeur as to the route or direction or place he was to take Mrs. Brannan. An objection to that question was sustained. He was then asked whether he had had any conversation with his chauffeur with reference to taking her to any particular place or direction, and he replied that he had no conversation with him, and he was then asked what instruction he had given him to go to Mrs. Brannan on that occasion. An objection to that question was sustained, and these rulings are the subject of the first and second exceptions. While these questions were relevant and material, we cannot see how the appellant was injured by these rulings, because he had already stated that he had given the chauffeur no instructions as to taking Mrs. Brannan out, that he had had no conversation with him as to the place or direction he was to go with her, that he had had "no conversation" with him at all, and he later said that according to his "best recollection" he had not seen him before he went for her.

The appellant was later asked: "Will you tell us what interest if any you had in the trip that Mrs. Brannan was making that afternoon in the car with the driver?" An objection to that question was sustained, and he was then asked: "Will you state whether or not the car on that afternoon in which Mrs. Brannan was riding was being used for your benefit or pleasure?" An objection to that question was also sustained, and these rulings are the subject of the third and fourth exceptions. Similar questions were asked in the examination of Mrs. Brannan, and were upon objection refused by the court, and these rulings are the subject of the sixth and seventh exceptions. The reason for these rulings is not apparent. These questions related to the precise issue upon which the case turned, and were addressed to a competent

witness, and they asked for facts which the defendant was entitled to submit to the jury if they existed, and they should have been permitted. But the errors are not reversible, because it cannot be said that the appellant was injured by these rulings, since it is obvious from all the evidence that he loaned the car to Mrs. Brannan for her benefit and pleasure, and that he had no interest in her use of it further than that of extending a courtesy to a friend and the mother of his deceased wife.

In the course of her direct examination Mrs. Brannan volunteered the statement that "if the Dodge car had stayed in the line going west there would not have been any accident." Upon motion that statement was stricken out and that ruling is the subject of the eighth exception. We find no reversible error in that ruling. For while it may have been proper for her to make that statement, appellant could not have been injured by its exclusion, because his own witnesses gave their version of the accident and all the surrounding circumstances, and if their testimony was true Mrs. Brannan only stated a self-evident fact of which the jury had already been informed.

The fifth and ninth exceptions were abandoned in this court and need not be considered.

After the conclusion of the case, but before the jury had retired to consider their verdict, Mr. Brawner was approached by one of the jurors, who happened, apparently by accident, to be near him, and was asked by the juror where "the colored chauffeur was," and Brawner replied that he did not know. The "colored chauffeur" to whom the juror referred was appellant's chauffeur, who was driving his car at the time of the accident, and who had been in court during the last day of the trial, but was not present at its close, and had not been called as a witness by either side. Nothing appears to have been said to the court about the incident until after the jury had returned their verdict, and judgment thereon had been entered. Then appellant filed a motion to strike out the judgment on the ground that the conduct of the juror had

"irreparably injured him," and that the judgment was unjust and unfair. It is not apparent how appellant could have been injured by the conduct of the juror of which he complains. In fact, it tended rather to help than hurt him, for the jury of course knew that the chauffeur had not been called, but they did not know why, and the juror's question gave appellant an opportunity to explain that, because if he did not know where the witness was that would be some excuse for not calling him. But whether it injured him or not, it was too late for him to complain of it after the jury had returned their verdict. He could not keep to himself the knowledge that one of the jurors had been guilty of misconduct sufficient to disqualify him until he found out whether the verdict was for or against him, and complain for the first time when it was against him. *Poe, Practice,* sec. 348A; 35 C. J. 404½. Counsel also relies in support of that motion upon certain conduct of the court and counsel supposed to have been prejudicial to the appellant, as well as upon the supposed fact that the judgment in the case was so excessive as to indicate that the jury in giving it were influenced by passion and prejudice. But no objection was made at the time to the conduct of which the appellant now complains, and it cannot under the statute, article 5, section 10, be considered on this appeal. Nor in dealing with the motion could we consider the fact, if it were properly before us, that the verdict was excessive. That, together with the supposed conduct of court and counsel of which appellant complains, were matters proper for the consideration of the trial court on a motion for a new trial, but this court will no more review the action of the trial court in dealing with such facts in connection with such a motion as that before us, than we would review its action in dealing with a motion for a new trial.

There is however, a more serious objection to the judgment which may be reached by the allegation in the motion that it was unjust and unfair, and that is that the court in disposing of the motion for a new trial filed by the appellant in the case passed the following order: "Motion for a new

trial granted unless plaintiff enter a remittitur of two thousand five hundred dollars ($2,500.00) from the verdict of five thousand dollars ($5,000.00), on or before the 19th day of January, 1926.   The defendant shall have until the 19th day of January, 1926, in which to waive and abandon his exceptions, if said remittitur be made, and, if defendant shall not so waive and abandon his exceptions, then said remittitur, if made, shall be rescinded and cancelled and the motion for a new trial shall be overruled, as of January 4th, 1926." By that order the trial court judicially determined that the verdict of the jury was grossly excessive, and it granted a new trial for that reason unless the appellee remitted the excess. In doing that it unquestionably was acting within its jurisdiction. *Attrill v. Patterson,* 58 Md. 260.   But it annexed to the order a condition that the appellant should not receive the benefit of it unless he abandoned his right to appeal to this Court for the correction of alleged errors of the court in the trial of the case. That is, in effect it punished the defendant for availing himself of his statutory right of appeal by imposing upon him a fine of $2500 if he failed to successfully prosecute his appeal.   In doing that we think the court exceeded its jurisdiction, and the condition annexed to the order was void, and no judgment should have been entered in the case, unless the plaintiff remitted $2500 of the amount awarded by the verdict.   If the sum of $2500 was full and adequate compensation for the plaintiff's injuries, manifestly the court had no authority to compel the defendant to pay her $2500 more than that because he failed in his effort to show that she was not entitled to recover at all.   Whether the court did or did not err in the trial of the case had nothing to do with what would fairly compensate the plaintiff for her injuries and losses.

While this precise question does not appear to have arisen in this state, it has been before other courts, and in *Hall v. N. W. R. Co.,* 81 S. C. 534, the court in referring to it said: "Hence when, in the exercise of his judgment and discretion, the circuit judge makes an order that a new trial should be granted unless the plaintiff remits so many dollars from the

verdict, that is an adjudication that the verdict is by that amount clearly excessive, and that the defendant is of legal right entitled to be relieved from that excess or have a new trial. * * * It is true that the order for a new trial was a benefit bestowed upon the defendant, but it was a benefit to which he was entitled, not by grace, but by right, as soon as the verdict was adjudged excessive, and it cannot be made a condition of the enjoyment of this right that he shall surrender his other right to appeal to the Supreme Court on the ground of error committed in the course of the trial."

Such cases as *Lee v. Tinges,* 7 Md. 227, which hold that the trial court, before hearing a motion for a new trial at all, may compel the movant to elect whether he will stand on his right to have the rulings of the trial court upon matters of law made in the course of the trial reviewed by the appellate court, or upon his motion for a new trial, are not in point. For it is one thing for the trial court to say to the movant, "you can try your exceptions to the rulings of the trial court made in the course of the trial here, or, you can try them in the appellate court, but you cannot try them twice"; and quite another thing to say to him in cases where no such election has been required, and after the motion has been heard, "the verdict in this case is grossly excessive and unjust, and it is possible that you have been injured by erroneous rulings of the court in the course of the trial, but unless you waive your exceptions to those supposed errors, and abandon your appeal, you must pay in full this excessive and unjust verdict, although it may be that if the trial court had not erred you would not be required to pay anything. In our opinion, therefore, that part of the order under consideration which provided that any remittitur entered under it should be rescinded and cancelled and the motion for a new trial overruled unless the appellant waived and abandoned his exceptions, is null and void, and the judgment in the case was improvidently and improperly entered. Because with that part of it eliminated, the order directed that a new trial be had unless the plaintiff remitted $2500 of the verdict, so that if the remittitur were made judgment would

be entered for the plaintiff for $2500, and if it were not made no judgment at all would be entered, but the case would stand for a new trial.

The plaintiff in due course remitted $2,500, but the defendant failed to waive and abandon his exceptions, and the court thereupon rescinded and cancelled the remittitur and overruled the motion for a new trial. From what has been said, that order should not have been passed, but judgment should have been entered for the plaintiff for $2,500 as soon as the plaintiff remitted $2,500. The judgment appealed from will, therefore, be reversed, with costs of this appeal to the appellant and judgment entered for the plaintiff for $2,500 and costs of suit.

> *Judgment reversed, with costs of this appeal to the appellant, and judgment entered for the plaintiff for $2,500.*