541 A.2d 969

**Fabio K. BANEGURA**

v.

**Nacole v. TAYLOR.**

**No. 42, Sept. Term, 1986.**

Court of Appeals of Maryland.

June 3, 1988.

610

612

Joyce Seunarine (Law Office of Benjamin L. Cardin, on the brief), Baltimore, for appellant.

Jonathan Schochor (Philip C. Federico, Kerry D. Staton and Schochor, Federico & Station, P.A., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ., and SMITH, (retired, Specially Assigned).

McAULIFFE, Judge.

This case involves a claim for damages for rape brought by a baby-sitter against her employer, and the effect upon this appeal of a claim for damages brought by the employer against his attorney.

## I *Facts*

█ Nacole V. Taylor complained to the Baltimore City Police that she was raped by Fabio K. Banegura while babysitting in his home on November 20, 1983. Criminal charges of rape and assault were brought against Banegura, and he retained Norman Burke, a Maryland attorney, to represent him. Acting upon the advice of Burke, Banegura entered an Alford [1] plea of guilty to the charge of assault and was given a sentence of four years imprisonment, the execution of which was suspended upon condition that Banegura successfully complete three years of probation.

Taylor then filed a civil action against Banegura, claiming damages for the alleged rape. Banegura was served with original process and he forwarded the pleadings and papers to Burke, with a request that Burke represent him in the case. When no answer or other pleading was filed within the time specified in the summons, an order of default was

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. An Alford plea is one in which the defendant knowingly and voluntarily enters a plea of guilty, but does not admit to having committed the crime. In *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the United States Supreme Court held there is no constitutional impediment to the acceptance of such a plea, provided the record discloses a strong factual basis indicative of guilt. Maryland permits acceptance of an Alford plea. *Hudson v. State,* 286 Md. 569, 598–99, 409 A.2d 692 (1979), *cert. denied,* 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980).

entered. Notice of the default was promptly sent to Banegura by the Clerk of the Circuit Court for Baltimore City and Banegura delivered that notice to Burke. Nothing was filed by or on behalf of Banegura within thirty days from the entry of the order of default, and Taylor requested that the court enter a judgment of default. That "judgment" was entered, without proof of damages, and the case was scheduled for a jury trial to determine the damages. On the day scheduled for trial, Banegura appeared but Burke did not. At the request of Banegura, Judge Joseph Pines held the matter over until the afternoon and, when informed that Burke still could not be found, continued the trial for two weeks, to February 14, 1985. Three days later, Burke filed a motion to strike the default. That motion was heard and denied by Judge Pines on February 11, and on February 14 the case was called for trial on the issue of damages before Judge Philip M. Fairbanks.[2] Prior to the commencement of trial, Burke again requested that the order of default be vacated, but Judge Fairbanks denied the request. Burke then conferred with Banegura, and during a chambers conference at which Banegura was not present Burke informed Judge Fairbanks that his client had elected not to participate in the trial, but would observe the proceedings from the spectators section of the courtroom. Trial took place that day and the next, and resulted in a judgment in favor of Taylor in the total amount of four million dollars.[3] Timely filed motions for a new trial or for a remittitur were heard and denied by Judge Fairbanks, after which Banegura filed an appeal to the Court of Special Appeals. In an unreported per curiam opinion, that Court

---

**2.** Judge Fairbanks was a judge of the Circuit Court for Montgomery County, sitting in the Circuit Court for Baltimore City by designation of the Chief Judge of this Court.

**3.** The jury returned a verdict of two million dollars compensatory damages and three million dollars punitive damages. Judge Fairbanks directed the entry of judgment in the amount of two million dollars compensatory and two million dollars punitive, to conform the judgment to the relief claimed in the complaint.

dismissed the appeal as to the judgment by default, finding it untimely, and affirmed the judgment as to damages. We granted Banegura's petition for a writ of certiorari.

While his appeal was pending before the Court of Special Appeals, Banegura filed a civil action for damages against Burke in the Circuit Court for Baltimore City, alleging malpractice, breach of contract, and fraud. Burke was served, but did not answer, and after an ex parte trial before Judge Milton Allen, judgment was entered in favor of Banegura for four million dollars compensatory damages and three million dollars punitive damages. No appeal was taken from that judgment. Taylor included in her brief, filed with this Court, a motion to dismiss, contending that Banegura's prosecution to judgment of the claim against Burke precludes the further prosecution of this appeal.

## II *The Motion to Dismiss*

 Taylor's motion to dismiss the appeal is based upon the well-settled principle that "[t]he right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal." *Rocks v. Brosius*, 241 Md. 612, 630, 217 A.2d 531 (1966). As we pointed out in *Franzen v. Dubinok*, 290 Md. 65, 68–69, 427 A.2d 1002 (1981), this rule of preclusion has been variously characterized as grounded upon notions of estoppel, waiver, acquiescence, acceptance of benefits, or mootness. However we may view the underpinnings of the rule, it is clear that "a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review." *Id.* at 69, 427 A.2d 1002.

Taylor argues that Banegura sued Burke for, among other things, allowing a four million dollar judgment to be entered against him. By so doing, she says, and by obtaining a judgment against Burke that includes the amount of the judgment Taylor obtained against Banegura, Banegura

acquiesced in and relied upon the judgment he now seeks to attack. Her contention does not survive close inspection.

Banegura's action against Burke sought damages for substandard representation in the criminal case, as well as in the civil case brought by Taylor. Banegura contended that he was innocent of the criminal charges, and that his decision to plead guilty was made as a result of inadequate and incomplete advice given by Burke. Although Banegura alleged that a judgment had been entered against him in the civil case, he also complained that he had suffered damage as a result of the publicity that had resulted from the verdict in that case. Banegura specifically claimed damages for: payment of the judgment of four million dollars, attorney's fees to prosecute an appeal in the civil case, "irreparable" damage to his medical practice, loss of reputation, and the public scorn, ridicule, and abuse to which he claimed to have been subjected.

Banegura's claim against Burke for damages thus fell into two categories. One involved the existence of a four million dollar judgment against him—a potential financial liability that he made clear in his complaint he was attempting to avoid by prosecuting an appeal. The other category involved irreversible damages to his reputation and livelihood, as well as expenditures made and certain to be made. We need not decide the correctness of Taylor's contention that Banegura's recovery of a judgment that included damages in the first category would preclude the further prosecution of this appeal, because the combination of the amount of the award for compensatory damages and the explanation of damages provided by Judge Allen's written opinion leaves no doubt that the four million dollar Taylor judgment was *not* included in the award of damages in Banegura's action against Burke. Judge Allen said:

> In assessing damages, the Court has considered the unnecessary public scorn and ridicule the Plaintiff has suffered. The Court is aware that the Plaintiff has received national news coverage as a result of the Defendant's actions. Accordingly, the Plaintiff's medical

practice has suffered greatly with an approximate 75% reduction in his yearly earnings. Moreover, Dr. Banegura has lost hospital privileges at several local hospitals. Additionally, Dr. Banegura's right to practice medicine in Maryland is now threatened as a result of negative public opinion. The Court has no way of calculating the other less tangible personal sufferings but thinks these too are great. Accordingly, this Court feels compelled to award a judgment that seeks as best it can to compensate for all these damages. In addition because of the reckless nature of the Defendant's actions the Court chooses to award punitive damages in this case.

We do not know whether Banegura, in the course of proceedings before Judge Allen, abandoned his claim for damages based on the amount of the judgment against him, or whether Judge Allen decided he should not include that amount because Banegura was actively seeking to reverse the judgment on appeal. In either event, we are satisfied that the judgment obtained by Banegura against Burke did not include the amount of the judgment in the case before us, and that Banegura is therefore not precluded from the further prosecution of this appeal.

### III *Motion to Strike Default*

Petitioner contends that Judge Joseph Pines erred in denying his motion to strike the default "judgment." Respondent answers with alternative contentions: 1) that no timely appeal was taken from the denial of the motion to strike; and 2) that, in any event, the denial of the motion was proper.

The following chronology of events is relevant to the question of the timeliness of the appeal:

> 10/24/84—Action filed.
> 10/26/84—Banegura served.
> 11/29/84—Order of default entered.
> 11/30/84—Notice of default sent by clerk.
> 1/ 4/85—Order of judgment by default entered.
> 2/ 4/85—Motion to strike filed.

2/11/85—Hearing on motion, and entry of order denying motion.
2/14/ &
2/15/85—Jury trial on damages.
2/22/85—Motions for new trial filed.
3/22/85—Entry of order denying post-trial motions.
4/19/85—Appeal filed.

Respondent argues that the order of January 4, 1985, was a final judgment on the issue of liability, and that the time for appeal expired thirty days after its entry. Furthermore, she says, the filing of the motion to strike thirty days later did not extend the time for taking an appeal.

■ If petitioner were correct concerning the nature of the January 4 order, her analysis of the effect of the later motion to strike would be sound. *Unnamed Atty. v. Attorney Griev. Comm'n*, 303 Md. 473, 486, 494 A.2d 940 (1985). She is wrong, however, in treating the order of January 4 as a judgment. It was not a judgment—indeed it served no function at all and must be considered a nullity. Respondent in seeking that order, and the court in granting it, were adhering to a default procedure that existed under former Maryland Rule 310, but which was changed by the adoption of Rule 2–613, effective July 1, 1984. Under the former procedure, a default judgment could be entered for failure of a defendant to plead, and when entered, became a final and appealable judgment as to liability. *Himes v. Day*, 254 Md. 197, 254 A.2d 181 (1969).

■ Under the current procedure, which was in effect when Banegura defaulted, the *order* of default was correctly entered, but a *judgment* should not have been entered until there had been satisfactory proof of damages. Rule 2–613(e). The amendment to the rule was specifically designed to avoid piecemeal appeals, and no appeal may be taken from the entry of an order of default. *Adams v. Mallory*, 308 Md. 453, 459–60, 520 A.2d 453 (1987); *O'Connor v. Moten*, 307 Md. 644, 647 n. 2, 516 A.2d 593 (1986). Likewise, an immediate appeal could not have been taken from the denial of Banegura's motion to strike the default order. That order was interlocutory, because it did not dispose of the entire claim. Rule 2–602. As an interlocu-

tory order, it was subject to revision within the general discretion of the trial court until a final judgment was entered on the claim. *Henley v. Prince George's County,* 305 Md. 320, 328, 503 A.2d 1333 (1986).

■ Banegura's motion to strike, filed more than thirty days after the entry of the order of default, must be viewed as a request that the trial court invoke its authority to revise an order intended to be final in nature, but which was, in fact, interlocutory. A trial judge possesses very broad discretion to modify an interlocutory order where that action is in the interest of justice. *Henley v. Prince George's County, supra,* 305 Md. at 328, 503 A.2d 1333. *See also Zimzores v. Veterans Admin.,* 778 F.2d 264, 266 (5th Cir.1985); *Greene v. Union Mut. Life Ins. Co. of America,* 764 F.2d 19, 22–23 (1st Cir.1985).

■ With respect to the entry of the order of default, there was no error. Banegura was personally served on October 26, 1984, a fact he readily acknowledged. He did not respond within thirty days, and the order of default was therefore properly entered. Notice of the default was received by Banegura, yet Banegura took no action to have the default set aside within the thirty days permitted by Rule 2–613(c). His motion to strike was not filed until sixty-seven days after the entry of the default order.

■ With respect to the later refusal of the court to modify the order denying the motion to strike, we find nothing about the circumstances of this case that would justify appellate interference with the discretion exercised by Judge Pines. Banegura and Burke offered two different explanations for this failure to file an answer to the complaint or a timely motion to strike the default. Banegura said he had turned over all the papers to Burke, as he received them, and that Burke had agreed to represent him. Burke, on the other hand, said that although he had represented Banegura for a number of years, and had received the suit papers and notice of default, he had not been

"retained" by Banegura until February 4, 1985.[4] Neither Burke nor Banegura set forth a legal or a factual basis for a defense to Taylor's claim, or generally alleged that any defense existed. We conclude that under these circumstances Judge Pines would have been justified in refusing to strike the default order even if Banegura's motion had been filed within thirty days after the entry of the default. Banegura's motion did not comply with the requirement of Rule 2–613(c), which provides that "[t]he motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim." As Chief Judge Murphy recently pointed out for the Court in *Carter v. Harris*, 312 Md. 371, 378, 539 A.2d 1127 (1988), failure to comply with the mandate of this rule may not deprive the trial judge of the right to grant the motion, but it may furnish justification for the denial of it. Moreover, there was little in either version of the facts given by Banegura and Burke to suggest to Judge Pines that it would be equitable to excuse the failure to plead. If Burke correctly stated the facts, Banegura had no one to blame but himself for his failure to retain an attorney. If Banegura was correct, as now seems more likely, there is no apparent excuse for Burke having failed to file a timely plea. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–36, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962). We do not suggest that Judge Pines could not have granted the motion —rather, we make clear that it was well within his discretion to deny it even if it had been timely filed.

---

**4.** Correspondence filed at a later time discloses that Burke received the suit papers from Banegura at a meeting of October 29, 1984; that Burke thereafter determined that Banegura's insurance policy did not cover the claim; and that on November 12, 1984, Burke wrote Banegura to advise him of that fact and to suggest that "you call me upon receipt of this letter so we may get together and plan our strategy." It seems clear that Burke had undertaken Banegura's representation in connection with this action well within the time required for the filing of an answer. *See Central Cab Co. v. Clarke*, 259 Md. 542, 270 A.2d 662 (1970).

If Banegura cannot succeed in his challenge to the trial judge's exercise of discretion in a situation where that discretion would be somewhat circumscribed by rule, he obviously cannot succeed in his appeal from an action over which the trial judge had very wide discretion.

## IV *Motion for New Trial*

Within ten days after the jury trial on damages, two motions for new trial were filed on behalf of Banegura— one by Burke, and one by Banegura. Both motions alleged error in the refusal to set aside the default, and in the conduct of the trial. Additionally, Banegura's pro se motion sought revision of the judgment pursuant to Maryland Rule 2–535, or, in the alternative, a remittitur. The motions were heard and denied by Judge Philip Fairbanks, who presided at the trial.

By the specific terms of Rule 2–613(f), the default adjudication of liability was not subject to the general revisory power under Rule 2–535(a). Banegura contended, however, that Rule 2–535(b) was applicable, and that the default should have been set aside because it was the product of an "irregularity" within the meaning of that rule's "fraud, mistake or irregularity" standard. The irregularity suggested by Banegura was the discrepancy that existed between his version of why Burke did not file an answer or timely motion, and the version given by Burke. This is clearly not the type of irregularity contemplated by Rule 2–535(b), and Judge Fairbanks did not abuse his discretion in refusing to revise the judgment.

Banegura's final assault on the default aspect of the judgment was his contention that Judge Fairbanks had erred in refusing to set aside the default pursuant to a request made by Burke just prior to the commencement of the trial on damages, and that the error should be corrected by the granting of a new trial. This argument is similarly without merit. As we pointed out in part III of this opinion, the interlocutory order of default was subject to revision at any time before the entry of judgment, and thus, Judge

Fairbanks had the power to set aside the default. However, this request was made to Judge Fairbanks when the ink was barely dry on the order of denial that had been entered by Judge Pines, and Judge Fairbanks was not under any obligation to reopen that matter. In any event, just as Judge Pines was justified in refusing to set aside the default, so also was Judge Fairbanks.

One of Banegura's arguments in support of a new trial on the issue of damages had a bit more substance, however, and was considered at length by Judge Fairbanks. At the hearing of the motion, Banegura was represented by new counsel. Burke did not appear, although apparently he had promised Banegura's new attorney that he would be present. For the first time at this hearing, Banegura argued that Burke had practiced a fraud upon him and upon the court. Specifically, Banegura said that when he appeared on February 14 for the trial on damages, Burke told him that the default order prevented him from participating in the trial. At the same time, he says, Burke was telling Judge Fairbanks that Banegura had elected not to participate in the trial, but rather would observe it from the spectators area. At the hearing on the motion for new trial, Dr. Banegura was allowed to argue this point, along with his attorney, and he put it this way:

> Your honor, I think we are requesting a new trial because of fraudulent misrepresentation. You did see me at the Court on the 14th and on the 15th. Before the Court started, we did have a brief conversation with Mr. Burke. He said I could not participate.

The record of the chambers conference held on February 14, just prior to the commencement of trial, shows the following:

> THE COURT: The case is here today for trial. Representing the defendant is Mr. ?
>
> MR. BURKE: Norman E. Burke.
>
> THE COURT: And he wishes to put something on the record. Mr. Burke.

MR. BURKE: After conferring with my client, Dr. Banegura has decided not to further participate in this inquisition and damages today. He has, however, asked me to remain as an observer and observe the progress of the trial in that regard.

It is clear that Banegura and his wife were present in the courthouse and had conferred with Burke, but that Banegura was not present during the conference in chambers. Banegura and his wife did remain in the courtroom, in the spectators area, throughout the trial of the case.

 Banegura argued that Burke had perpetrated a fraud upon the court by falsely telling Judge Fairbanks that Banegura had elected not to participate in the trial, and that this fraud had prevented a fair trial on the issue of damages. After careful consideration of the issue, Judge Fairbanks denied the motion for a new trial, reasoning that even if Burke had misstated the position of his client, a new trial was neither required nor appropriate. We hold that this decision was well within the broad discretion of the trial judge. Whether the problem between Banegura and Burke was one of miscommunication, or involved an intentional deception by Burke, the fact remains that the genesis of the misunderstanding lay entirely with the two of them, and there was no suggestion that the plaintiff had participated in, or been aware of, any fraud upon the court. Under those circumstances, the decision of the trial judge to leave Banegura with whatever remedy he might have against Burke cannot be faulted.

Petitioner's final argument concerns his request for a remittitur. Claiming that the award of two million dollars compensatory damages and two million dollars punitive damages was clearly excessive, Banegura requested in his motion that Judge Fairbanks grant a new trial unless Taylor would accept a remitted amount. Although the greater part of the memorandum filed by Banegura in support of his motion addressed the issue of a remittitur, the oral argument of the motion was devoted almost exclusively to questions involving the default and involving Bane-

gura's participation in the trial on damages. Understandably, the parties first argued those issues that might result in the unqualified grant of a new trial. When those issues were resolved adversely to the petitioner, he sought to argue his request for a remittitur. The trial judge was not disposed to hear argument on that aspect of the motion, opining that he entertained some doubt concerning petitioner's standing to request a remittitur when he had not participated in the trial, and indicating also his reluctance to take any action that might result in a new trial when he had already ruled that Banegura was not entitled to a new trial.

A trial judge, upon finding a verdict excessive, may order a new trial unless the plaintiff will agree to accept a lesser sum fixed by the court. *Conklin v. Schillinger,* 255 Md. 50, 257 A.2d 187 (1969); 2 Poe, *Pleading and Practice at Law,* Pr. § 347 (4th ed. 1969). The standard to be applied by a trial judge in determining whether a new trial should be granted on the ground of excessiveness of the verdict has been variously stated as whether the verdict is "grossly excessive," or "shocks the conscience of the court," or is "inordinate" or "outrageously excessive," or even simply "excessive." *Conklin v. Schillinger, supra,* 255 Md. at 69, 257 A.2d 187; *Dagnello v. Long Island Railroad Co.,* 289 F.2d 797, 802 (2d Cir.1961). The granting or refusal of a remittitur is largely within the discretion of the trial court. *Conklin v. Schillinger, supra,* 255 Md. at 68, 257 A.2d 187; *State, Use of Shipley v. Walker,* 230 Md. 133, 137, 186 A.2d 472 (1962). We have said that an abuse of that discretion may be reviewed by an appellate court "under extraordinary circumstances," *State, Use of Shipley v. Walker, supra,* 230 Md. at 137, 186 A.2d 472, but that "[w]e know of no case where this Court has ever disturbed the exercise of the lower court's discretion in denying a motion for new trial because of the inadequacy or excessiveness of damages." *Kirkpatrick v. Zimmerman,* 257 Md. 215, 218, 262 A.2d 531 (1970). Were we satisfied that the trial judge had considered the claim of excessiveness on its merits, we would affirm. We are concerned,

however, that the trial judge may not have evaluated the claim of excessiveness, either because of his concern that petitioner lacked standing to move for a new trial on this ground, or because he was uncomfortable with the prospect of Banegura obtaining a new trial by what he considered to be an indirect route. Neither concern is valid. The purpose of granting a new trial is to avoid injustice, and we do not believe that the level of a party's participation in the proceedings should dictate whether that party may suggest that an injustice would result if an excessive verdict were allowed to stand.

■■■ Although Banegura's failure to object to rulings, instructions, and arguments during the course of the trial may be taken as a waiver of error, precluding the assertion of those issues in a motion for new trial, that principle is not applicable in the case of an excessive verdict. There, the first opportunity to object is through the motion for a new trial. We hold that Banegura had not waived his right to request a remittitur.

The second concern of the trial judge, that through the use of a remittitur procedure the defendant might indirectly achieve a result to which the judge had determined he was not otherwise entitled, should not have been considered. A trial judge must consider a claim of excessiveness of the verdict on its own merits, and if he finds the verdict so excessive that relief should be granted, he should enter the remittitur without regard to whether the plaintiff is likely to accept it or whether a new trial will result.

Because we are unable to say from this record that the trial judge did exercise his discretion to consider the claim of excessiveness of the verdict, we shall direct that this case be remanded to permit consideration of that single issue.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER

PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY PETITIONER.