890 A.2d 899

**HEBRON VOLUNTEER FIRE DEPARTMENT, INC.**

v.

**Robert N. WHITELOCK.**

**No. 2047, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Jan. 30, 2006.

620

George M. Church (Laura A. Cellucci, on brief), Baltimore, S. Mark Tilghman, Peter J. Golba, on brief, Salisbury, for appellant.

Robert C. Verderaime, Raymond E. Callegary, on brief, Baltimore, for appellee.

Panel MURPHY, C.J., KENNEY and SHARER, JJ.

KENNEY, J.

Appellant/cross-appellee, Hebron Volunteer Fire Department, Inc. ("Hebron VFD"), appeals the decision of the Circuit Court for Wicomico County setting the amount of remittitur at $225,000, thereby reducing an award of $525,000 for non-economic damages to $300,000. Appellee/cross-appellant, Robert N. Whitelock, cross-appeals the circuit court's decision to grant Hebron VFD's motion for a new trial and/or remittitur. Hebron VFD presents one question, which we have rewritten as follows:

Did the circuit court err in the criteria it used to determine the amount of the remittitur?

Whitelock poses two questions, which we have rewritten as follows:

1. Did the circuit court abuse its discretion in granting the remittitur?

2. Did Hebron VFD preserve for appeal the issue of the proper criteria for determining remittitur?

For the following reasons, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

On July 12, 2001, fifty-nine year old Robert Whitelock, along with several family members, attended a carnival that was sponsored by Hebron VFD. Joined by his three year old grandson, Whitelock rode the ferris wheel. The ride was owned by Hebron VFD and, at the time, was being operated by James Shockley, then the president of Hebron VFD. At the conclusion of the ride, Shockley intended to turn the ferris wheel slowly, stopping each seat at a platform where the riders would exit their seats onto the platform. Whitelock's was the first seat brought down to the platform. Carrying his grandson, he stepped out of the ride, but, as he did so, the platform dropped. In Whitelock's words, "[w]e started to get up and when I was about three quarters of the way up, there was nothing else left [to step onto] but air."

Whitelock fell forward, landing on his left arm. His face struck either the platform or his grandson. The ferris wheel seat swung back and struck his legs against the platform.

He was taken by ambulance to a hospital, treated for his injuries, and discharged the same evening. Several days later he began physical therapy for the injuries to his right leg and left wrist and hand. Within several months, the injuries to his face and leg had healed. He sought a second opinion on the injuries to his wrist and hand because he was still experiencing pain and difficulty moving it. In January and February 2002, Whitelock underwent two operations on his left wrist.

In the second operation, three bones were removed from his wrist.

Whitelock testified that he required a great deal of care from his wife and sister-in-law while recovering from the surgery. He stated that he needed assistance in getting dressed and that he had trouble sleeping. After his initial surgery, he underwent physical therapy for his wrist and hand for five months. Still, he has "very little grip, very little strength" in his left hand, and has difficulty making a fist. He also stated that he suffers from pain in his left wrist every day, the level of which he estimates at "between six and seven" on a scale of one to ten. He testified further that there are numerous activities that he is unable to do because of the weakness of his left hand, including bathing, tying his shoes, playing golf, and hunting.

The court's instructions to the jury on damages were based substantially on the Maryland Civil Pattern Jury Instructions 10:1–2.

> In the event that you find for the Plaintiff on the issue of liability, then you must go on to consider the question of damages.

> It will be your duty to determine what, if any, award will fairly compensate the Plaintiff for his losses. The burden is on the Plaintiff to prove by a preponderance of the evidence each item of damage claimed to be caused by the Defendant, and in considering the items of damage, you must keep in mind that your award must fairly and adequately compensate the Plaintiff, but an award should not be based on guesswork.

> In this action for personal injury, you shall consider the following; first, the injuries sustained—the personal injuries sustained and their extent and duration; the effects such injuries have on the overall physical and mental health and well-being of the Plaintiff; the physical pain and mental anguish suffered in the past and which with reasonable probability may be expected to be experienced in the future,

the medical and other expenses reasonably and necessarily incurred in the past.

In awarding damages in this case, you must itemize your verdict or award to show the amount intended for medical expenses incurred in the past and non-economic damages sustained in the past and reasonably probable to be sustained in the future. All damages which you may find for pain, suffering, inconvenience, physical impairment, and other nonpecuniary injury are non-economic damages.

Now, for purposes of calculating damages, the evidence is that the Plaintiff is presently 62 years old, and the parties have stipulated that according to the life expectancy tables, his life expectancy is 17.8 years.

Now, this figure is to assist you in determining the probable life expectancy of the Plaintiff as it bears on future losses and damages. It is not conclusive proof of the life expectancy, and you are not bound by it. It is only an estimate based on average experience.

In closing argument, Whitelock's counsel told the jury that his past medical expenses totaled $14,929.64. With respect to non-economic damages, counsel argued:

I am going to give you a range. I want you to keep in mind that this is only a suggestion which I suggest the evidence suggests, that you can consider it. You may accept it. You may reject it. You may totally ignore it. You may think I am too high. You may think I am too low, but I want to give you the rationale for what I have done.

\* \* \*

For [the] three years [from the time of the injury to the time of trial], I am going to suggest a pay figure of 27,375 and a high of 82,125. Now, how do I get those figures? Did I just pick them out of the air? And the answer is no because if you use this figure for those three years, [$27,-375,] that comes to $25 a day. That's all that is for what he has gone through in the past three years. If you use this figure, [$82,125,] it is $75 a day.

... I am suggesting that that is the range for those three years, [b]etween 27,375 and 82,125 or more or less.

\* \* \*

Now, they are talking about 17 years, and the only thing that is different in the next 17 years is that he no longer is going to have to undergo the injections. He no longer is going to have the physical therapy. There is no evidence of that, and I agree with that.

He said he is not going to have the fusion because it will just give him a frozen wrist, but he may. So for the next 17 years, all the things that he ticked off for you as to what he used to do, what he liked to do, have been taken away from him. And somehow, someway the law says to you, you got to put a monetary damage on it. You have got to put a money figure on it.

The law doesn't allow or doesn't say that I can go or the Judge can go to a book and pull it off and say, okay, this is worth X number of dollars. This is X number of dollars. This is Y number of dollars. It is your collective judgments as to what you believe fair, not for what the Clerk might take, not for what my son might take, but how it has affected Mr. Whitelock.

If the yard stick is $10,000 a year which is a little bit more than $25 a day, a little bit more than $25, not much, that for 17 years, it is $170,000.

If it's, say, $15,000, if that's a fair figure, when you multiply that out, it's [$]255,000. And again, just to give you a range as to what you may think is reasonable. If it's [$]20,000, that comes to [$]340,000.

... So despite what this figure is, whatever yard stick you want to use ... whatever you in your collective judgment think is fair, then fairness dictates that you do what? That you got to multiple it by 17 despite what that figure is.

In Hebron VFD's closing argument, counsel stated with regard to damages:

Now, if you decide that, hey, you are negligent, then you have to go on to the damage aspect. Now, I just want to

leave you with a few questions and address a few issues here.

First of all, the life expectancy. That is not something set in stone as we know. People have died younger. We have people who have died in their hundreds, nineties. That is just a guide for you. It doesn't mean you have to take a number and multiply it by that number. That is for you to deliberate and decide what is fair and reasonable.

\* \* \*

... You have to ask yourself, what is this case worth? I am not going to sit here as I was challenged to do and put numbers on you because I don't tell people what to think. When people come in my office, I never tell them what to think because you are all adults as I said.

You have heard the evidence. Don't let anyone tell you what to think because you, as a community, you represent the community here, have to tell us what you think.

... You are going to look at all the evidence, discuss it, and come to a fair and reasonable verdict, and that is all we ask for.

The jury found Hebron VFD negligent in causing Whitelock's injuries. It awarded Whitelock $15,000 for past medical expenses, and $525,000 in non-economic damages.

Hebron VFD moved for a new trial and/or remittitur. On October 12, 2004, the court held a hearing on that motion. After hearing argument, the court granted Hebron VFD's motion for a new trial as to damages unless Whitelock agreed to a remittitur of $225,000, or the reduction of the non-economic damages award from $525,000 to $300,000. On October 20, 2004, Whitelock accepted the remittitur. Thereafter, Hebron VFD noted this timely appeal, and Whitelock this cross-appeal.

## DISCUSSION

We begin by addressing Whitelock's argument on cross-appeal that the circuit court abused its discretion in finding

that the verdict was excessive. We will then address Hebron VFD's contention with regard to the amount of the remittitur, including Whitelock's argument that Hebron VFD failed to preserve the issue for appellate review.

### I. Granting of Motion for Remittitur

■ Whitelock argues that "[t]he lower court abused [its] discretion in granting a remittitur of $225,000." Generally, by accepting a remittitur, the plaintiff waives her right to appeal the issue. *Surratt v. Prince George's County, Md.*, 320 Md. 439, 458–59, 578 A.2d 745 (1990). Pursuant to Md.Code (1974, 2002 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article, however, "a plaintiff who has accepted a remittitur may cross-appeal from the final judgment." Because Hebron VFD appealed the court's ruling on its motion for a new trial and/or remittitur, Whitelock has a statutory right to cross-appeal the remittitur even though he accepted it.

■■ "The trial practice of granting a new trial sought by the defendant, unless the plaintiff remit a portion of the verdict which the trial court deems excessive, is well established in Maryland." *Turner v. Washington Suburban Sanitary Comm'n*, 221 Md. 494, 501–502, 158 A.2d 125 (1960).

> The standard to be applied by a trial judge in determining whether a new trial should be granted on the ground of excessiveness of the verdict has been variously stated as whether the verdict is "grossly excessive," or "shocks the conscience of the court," or is "inordinate" or "outrageously excessive," or even simply "excessive."

*Banegura v. Taylor*, 312 Md. 609, 624, 541 A.2d 969 (1988) (citations omitted). Thus, the trial court has broad discretion to determine whether a jury's damages award is so excessive that it warrants a new trial, and to give the plaintiff the alternative option of accepting a remittitur. *Id.*

■ "We will not disturb a trial judge's remittitur decision except in cases of an abuse of discretion." *Owens–Illinois, Inc. v. Hunter*, 162 Md.App. 385, 415, 875 A.2d 157 (2005), *cert. denied*, 388 Md. 674, 882 A.2d 287 (2005). " '[A]

ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling.'" *Darcars Motors of Silver Spring, Inc. v. Borzym,* 150 Md.App. 18, 81, 818 A.2d 1159 (2003) (emphasis omitted) (quoting *North v. North,* 102 Md.App. 1, 14, 648 A.2d 1025 (1994)). Rather, for us to conclude that the circuit court has abused its discretion, " '[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.'" *Darcars Motors,* 150 Md.App. at 81, 818 A.2d 1159 (emphasis omitted) (quoting *North,* 102 Md.App. at 14, 648 A.2d 1025).

In this case, the court had before it evidence that, as a result of Hebron VFD's negligence, Whitelock had undergone several medical procedures and hours of physical therapy, and that he had experienced three years of pain and discomfort. Additionally, Whitelock had testified that, due to his injuries, he is limited in his ability to engage in a variety of tasks and activities. The parties stipulated that he is likely to live with these limitations for over seventeen more years. On the other hand, Whitelock's long-term disabilities do not prevent him from driving and carrying on a small business.

Taking this evidence into account, the circuit court concluded:

I recognize that Mr. Whitelock had incurred an injury. There was an injury that was incurred without fault on his part. It is an injury that has resulted in a permanent disability. And yet, considering all of the evidence, including the medical evidence, the medical records, the doctor's transcript, or deposition rather, it was shocking to the Court, and my initial reaction was that it was excessive.

Now, since the time of the trial, . . . the process that I guess I've been going through . . . was to, I guess, be sure that I have . . . extended the fullest consideration possible to the amount returned by the jury. . . . And I believe I've done that, and I nevertheless am, I conclude that the non-

monetary damage award was excessive under the facts of this case.

Accordingly, the court granted Hebron VFD's motion for a new trial as to damages, giving Whitelock the option of accepting a remittitur. We are not persuaded that the court abused its discretion.

## II. Amount of Remittitur

Even though it was successful in convincing the circuit court to order a remittitur, Hebron VFD appeals the amount of the remittitur. It argues that, because the Maryland courts have not set forth a standard by which trial courts are to calculate the amount of a remittitur, the trial judge was "left to concoct his own criteria for determining the appropriate remittitur." It urges us to adopt a standard articulated by the courts of another jurisdiction.

### A. Preservation

■ Whitelock argues that Hebron VFD failed to preserve this issue for appellate review. He asserts that "[t]hey had the opportunity to argue and to have the trial court consider (and accept or reject) the very same point which they now urge this Court to consider, but failed to do so."

In its memorandum in support of its motion to the circuit court, Hebron VFD contended that the jury's verdict was excessive and that it should be reduced, arguing "that remittitur of [the] jury's award of damages be made due to the excessive nature of the amount of the verdict." At the hearing on the motion, Hebron VFD stated: "The primary thrust of our motion, Your Honor, is with regard to the excessiveness of the verdict."

As to how excessive that award was, the court heard argument from both parties on what would have been the proper amount of non-economic damages:

THE COURT: Just tell me this, what do you think would be, the reasonable amount would be?

[COUNSEL FOR HEBRON VFD]: I would never have anticipated in this case a jury awarding more than ten times—you know, I would have guessed that it would be a tenth what it was, maybe a little more, but, I mean, that's the most I would have ever guessed. I mean, like I said, I was flabbergasted, I heard—

THE COURT: I understand that, but you are not answering my question.

[COUNSEL FOR HEBRON VFD]: With regard to—

THE COURT: What relief are you requesting in the way of remittitur?

[COUNSEL FOR HEBRON VFD]: I'm requesting that the Court in that regard do what I have seen courts do before, and that is grant a new trial with an amount determined by the Court to be appropriate, which, if the parties are in agreement to accept, would not, would avoid the necessity for a trial. It is my understanding that that—

THE COURT: I'm asking you what you think that amount should be.

[COUNSEL FOR HEBRON VFD]: Okay. Thank you, Your Honor. Your Honor, it was, I mean, my feeling is that an award of 75 thousand dollars for pain and suffering plus the special damages would be appropriate. Like I said, I couldn't have guessed more than ten times the actual specials. I have never seen it happen before.

THE COURT: Okay. Thank you.

\*　　\*　　\*

THE COURT: ... I conclude that the non-monetary damage award was excessive under the facts of this case.

\*　　\*　　\*

The more difficult part is establishing an amount for a remittitur. And I asked [Hebron VFD's counsel] that, and with considerable hemming and hawing, which I understand, he gave me a figure. I have not asked [Whitelock's counsel] that. And I realize this puts each of you in a

difficult position. But I want to extend to each of you the opportunity to argue that point briefly if you wish to.
... [Hebron VFD's counsel], I guess it's your motion, maybe I ought to give you, if you have any—I think you had said 75 thousand dollars....

\* \* \*

[COUNSEL FOR HEBRON VFD]: I have given up trying to figure why juries do what they do. I find that out after the fact. But I just in, I would have to say that in the sum of all my experience in looking at this, the evidence that was presented to this jury, I was shocked to see an award of pain and suffering any greater than that under the facts of this case. It just never occurred to me that it would happen.

THE COURT: All right.

[Whitelock's counsel], do you wish to comment on that?

[COUNSEL FOR WHITELOCK]: I think my argument is simply this, Judge, and obviously—I know obviously you are thinking about a remittitur from your comments. You know, the jury has spoken, and I'm not going to second guess the jury. If you're asking me what would be, what I would consider a fair remittitur; is that a fair question to the Court?

THE COURT: Right.

[COUNSEL FOR WHITELOCK]: They give 70 dollars a day, which I don't think was unfair. 60 dollars a day? 60 dollars a day would be, I think I calculated that out before of almost 7,600 days, would be 456,000.

And, Your Honor, you have asked me to give a figure. And I don't want to argue against myself, but I do want to respond to the Court, you have asked me to give a figure and I am and I have. I simply ask the Court when it's, whatever decision it's going to make, to please keep in mind that, you know, that as you instructed the Court—the jury, their verdict must fully and fairly compensate the Plaintiff. And I would think that they have, the presumption is they followed the rule of law.

I would ask this Court again to apply that same standard. That is, when you view the evidence, the entire evidence in light of what's happened to Mr. Whitelock, that you give him what is fair and full compensation. And that's all that any trier, any lawyer can ask of the trier of fact, be it a jury or a judge.

THE COURT: Okay. Well, 1 agree with [Hebron VFD's counsel] in this regard. It would not have been surprising to me if the jury had awarded $75,000. It would not have been surprising to me if the jury had awarded considerably more than that. It gets a little more difficult to quantify at what point one goes from not being surprised to being shocked.

And it's obvious that the jury found Mr. Whitelock to have sustained a serious injury and that it was deserving of substantial compensation. And so, trying to take that into account and balance what seems to me to, I guess, come closer or to get within the category where 1 would not, or whether or not this would be—well, let me just say this. What I think I'm going to do, and I think this is consistent with the evidence in the case, my assessment of the evidence in this case and the holdings of the Court of Appeals, Court of Special Appeals in the relatively few cases that have discussed this particular issue, is that I'm going to grant the motion for new trial as to damages only, unless the Plaintiff remits that portion of the verdict which exceeds $315,000. . . .

Hebron VFD thus raised the general issue of the jury's excessive verdict and remittitur. Both parties argued the issue of the proper amount of remittitur, and the circuit court decided the issue by granting the motion for remittitur and reducing the jury's verdict. We are satisfied that the issue was preserved for appellate review. Md. Rule 8–131(a).

### B. Standards for Determining the Amount of Remittitur

Hebron VFD asserts that "[t]here are no Maryland appellate decisions providing any guidance or standards upon which a trial court can rely to determine the appropriate amount of a

remittitur." Appellant urges us to adopt the standard set forth by the Supreme Court of New Jersey in *Fertile v. St. Michael's Med. Ctr.*, 169 N.J. 481, 779 A.2d 1078 (2001).

*Fertile* involved a medical malpractice claim that arose from an injury to a child during birth. The jury awarded the child $15 million and the mother $5 million. Upon a motion for a new trial or remittitur, the trial court stated that the verdict " 'took my breath away,' " and remitted $10 million of the child's damages award and $4.75 million of the mother's. *Id.* at 489, 779 A.2d 1078. In determining the proper amount of remittitur, the court stated that it was unsure whether "to use my common knowledge experience and knowledge vis-a-vis one injury," or to "do it in comparison to other[ ] [similar injuries]." *Id.* at 501, 779 A.2d 1078. The trial court concluded: "I think what I have to do is [consider] the totality of the circumstances as [to] what this [injury] means to a particular individual in a particular case." *Id.* On appeal, the Supreme Court of New Jersey considered whether the trial court had used the proper approach.

The Court noted:

Obviously, assessing the amount of a remittitur is a slightly more complicated function than merely determining entitlement to a new damages trial. It not only involves the conclusion that the damages award cannot stand because it constitutes a manifest denial of justice but also a determination that the remitted amount is what a reasonable jury, properly instructed, would have awarded.

*Id.* at 500, 779 A.2d 1078.

The Court addressed several "[d]ifferent approaches [that] have developed for determining the proper amount of a remittitur order." *Id.* Of the different approaches, the Court stated: "Because the process of remittitur is essentially to 'lop-off' excess verdict amounts, and not to substitute the court's weighing and balancing for that of the jury, remitting the award to the highest figure that could be supported by the evidence is the most analytically solid approach." *Id.* at 501, 779 A.2d 1078 (citations omitted). The Court concluded:

We have carefully reviewed this record in light of the aforementioned standards, and find no reason to interfere with the remittitur order. The trial court fully and carefully explained how it determined that the jury verdict was excessive and how it reached the remitted number. In so doing, it properly relied on the evidence it saw and heard. In addition, it based the decision on its own common knowledge, as well as its experience with other injury verdicts, and particularly on [the child's] extended life expectancy.

*Id.* at 501, 779 A.2d 1078 (citations omitted).

Hebron VFD emphasizes the statement of the court in *Fertile* that the trial court "properly relied on the evidence it saw and heard. . . . [and] based the decision on its own common knowledge, as well as its experience with other injury verdicts." *Id.* Hebron VFD states in its brief that "[i]t is this standard that [appellants] urge this Court to adopt."

"There is some difference of opinion on the standard by which the court should be guided in determining the amount that is to be remitted from the verdict." 11 Charles A. Wright et al., *Federal Practice & Procedure* § 2815 (2d ed.1995). In *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935), the Supreme Court of the United States held that remittitur is constitutional, stating:

Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess—in that sense that it has been found by the jury—and that the remittitur has the effect of merely lopping off an excrescence.

The approach that "[a] remittitur should fix the highest amount any jury could properly award" is widely accepted among state courts that have addressed the issue. *Cashdollar v. Mercy Hosp. of Pittsburgh,* 406 Pa.Super. 606, 618, 595 A.2d 70 (1991). *See, e.g., Exxon Corp. v. Alvey,* 690 P.2d 733, 742 (Alaska 1984) (stating that "[i]n our view the 'maximum possible recovery' approach is more appropriate in a remittitur context, because it comes closer to approximating the decision

made by the jury"); *Carney v. Preston,* 683 A.2d 47, 56 (Del.Super.Ct.1996) (stating that " '[u]nder the Delaware policy to highlight the role of the jury, our practice should be [in remittitur] to grant the plaintiff every reasonable factual inference from the record and determine what the record justifies as an absolute maximum' "); *Lassiter v. Int'l Union of Operating Eng'rs,* 349 So.2d 622, 627 (Fla.1976) (stating that "[a verdict] can only be reduced to the highest amount which the jury could properly have awarded"); *Eddy v. Litton,* 586 So.2d 670, 674 (La.Ct.App.1991) (finding "no error in the trial court applying the appellate standard," which required that it "reduce to the highest award that was reasonably within the jury's discretion"); *Clemens v. Lesnek,* 219 Mich.App. 245, 247, 556 N.W.2d 183 (1996) (stating that, pursuant to a state statute, "[t]he amount awarded on remittitur based on an excessive verdict must be the highest possible amount the evidence will support"); *Sandt v. Hylen,* 301 Minn. 475, 476, 224 N.W.2d 342 (1974) (noting that a remittitur "represented the highest dollar verdict permissible under the evidence, which is the appropriate standard to be applied"); *Haynes v. Golub Corp.,* 166 Vt. 228, 240, 692 A.2d 377 (1997) (stating that "[t]he size of the remittitur is the amount needed to eliminate the excess damages in the jury's verdict").

This seems to be the predominate approach among the federal courts as well. *See, e.g., Strickland v. Owens Corning,* 142 F.3d 353, 357 (6th Cir.1998) (stating that " 'a motion for new trial seeking a remittitur of a jury's verdict . . . should be granted only if the award clearly exceeds the amount which, under the evidence in the case, was the maximum that a jury could reasonably find' "); *Conjugal P'ship Comprised by Joseph Jones & Verneta G. Jones v. Conjugal P'ship Comprised of Arthur Pineda & Toni Pineda,* 22 F.3d 391, 398 (1st Cir.1994) (stating that "the remittitur amount should reduce the verdict 'only to the maximum that would be upheld by the trial court as not excessive' "); *Earl v. Bouchard Transp. Co.,* 917 F.2d 1320, 1330 (2d Cir.1990) (holding that "a district court should remit the jury's award only to the maximum amount that would be upheld by the district court as not

excessive"); *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 774 (3d Cir.1987) (stating that, "[o]n review, this court may not require a reduction in the amount of the verdict to less than the 'maximum recovery' that does not shock the judicial conscience"); *Zeno v. Great Atl. & Pac. Tea Co.*, 803 F.2d 178, 181 (5th Cir.1986) (stating that "[t]he Fifth Circuit follows the 'maximum recovery rule,' according to which remittitur can only reduce a verdict to 'the maximum amount the jury could properly have awarded' "); *Carter v. Dist. of Columbia*, 795 F.2d 116, 135 n. 13 (D.C.Cir.1986) (stating that "[b]ecause the seventh amendment right to jury trial pervades the atmosphere, it is appropriate to set a remittitur so as to permit recovery of the highest amount the jury tolerably could have awarded"); *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 827 (11th Cir.1985) (stating that, "[a]s must a trial court in considering a motion for remittitur, in an appeal from the denial of such a motion we must independently determine the maximum possible award that is reasonably supported by the evidence in the record"); *Korotki v. Goughan*, 597 F.Supp. 1365, 1386 (D.Md.1984)[1] (stating that " 'a remittitur may be assessed in an amount that will bring the verdict on damages to the maximum amount which the jury could have awarded under the evidence introduced at trial' ").

■ The courts that follow the highest possible verdict standard generally do so on the basis that it affords the greatest deference to the jury. *See, e.g., Alvey*, 690 P.2d at 742. Reducing the jury's verdict to the greatest amount that it could have awarded on the evidence brings the damages award within the realm of what is legally permissible, while deferring to the jury's decision to generously compensate the plaintiff based on the evidence before it. *See, e.g., Earl*, 917 F.2d at 1328.

---

1. In *Korotki*, the court relied on federal precedent. Indeed, "[t]he incidents of jury trial [in federal court] are for the federal courts to decide for themselves, guided by the Seventh Amendment, and are not a matter on which state law should be given any effect." Wright, *supra*, at § 2802.

In some older cases, a few courts followed the opposite approach, requiring that the trial court reduce the jury's verdict to the lowest possible amount it could have awarded on the evidence. *See, e.g., Swanson v. Schultz,* 223 Wis. 278, 270 N.W. 43, 46 (1936) (stating that "the court determines from the evidence the lowest amount that an impartial jury properly instructed would reasonably award and uses that amount in framing the option to be offered to the creditor"); *Weidman v. Barnes,* 110 Neb. 377, 197 N.W. 425, 425 (1924) (stating that, " '[w]here a jury by its verdict has settled all issues in favor of plaintiff, but because of an erroneous instruction may have awarded excessive damages, an appellate court may properly permit the judgment to stand on remission by plaintiff of all above the lowest amount the evidence would warrant' "). It has been noted, however, that this is the "most intrusive" approach, and affords the least deference to the jury's verdict. *Slade v. Whitco Corp.,* 811 F.Supp. 71, 77 (N.D.N.Y.1993).

Some courts, without focusing on "maximum recovery" or "the lowest reasonable amount," have simply said that, "[w]hen a verdict is excessive as a matter of law, the amount of the remittitur ... rests largely within the discretion of the trial court." *Alfano v. Ins. Ctr. of Torrington,* 203 Conn. 607, 614, 525 A.2d 1338 (1987). *See, e.g., D'Annolfo v. Stoneham Hous. Auth.,* 375 Mass. 650, 661, 378 N.E.2d 971 (1978) (noting that Mass. R. Civ. P. 59(a) "requires that the plaintiff be given an opportunity to remit so much of the damages awarded as 'the court adjudges is excessive' "); *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.1986) (stating that "[l]ower courts should examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust"); *Wells v. Nat'l Indem. Co.,* 41 Wis.2d 1, 10, 162 N.W.2d 562 (1968) (stating that the law "requires the trial court to determine the damages in an amount it, as the trier of the fact, finds is fair and reasonable on the evidence"). Stated another way, "[a] court has the inherent authority to remit an excessive award ... to an amount supported by the

weight of the evidence." *Wightman v. Consol. Rail Corp.*, 86 Ohio St.3d 431, 444, 715 N.E.2d 546 (1999).

### C. Amount of Remittitur in Maryland

#### 1. Amount of Remittitur within Trial Court's Discretion

 The Court of Appeals has described the power of the trial court to determine the amount of a remittitur in various ways. In *Attrill v. Patterson*, 58 Md. 226, 260 (1882), the Court held: "[W]e think it proper to say that the action of the court, in requiring the plaintiff to remit so much of the verdict as was in excess of the damages laid in the declaration, was in entire conformity with the law, practice and decisions of the State." In other cases, the Court of Appeals and this Court have stated: "The trial practice of granting a new trial sought by the defendant, unless the plaintiff remit a portion of the verdict *which the trial court deems excessive,* is well established in Maryland." *Turner v. Washington Suburban Sanitary Comm'n,* 221 Md. 494, 501–502, 158 A.2d 125 (1960) (emphasis added). *Accord Conklin v. Schillinger,* 255 Md. 50, 64, 257 A.2d 187 (1969); *Mezzanotte Constr. Co. v. Gibons,* 219 Md. 178, 183, 148 A.2d 399 (1959); *Darcars Motors,* 150 Md.App. at 60, 818 A.2d 1159; *Podolski v. Sibley,* 12 Md.App. 642, 647, 280 A.2d 294 (1971). The Courts have also said: "A trial judge, upon finding a verdict excessive, may order a new trial unless the plaintiff will agree to accept a lesser sum fixed by the court." *Banegura v. Taylor,* 312 Md. 609, 624, 541 A.2d 969 (1988). *Accord Stevenson v. Branch Banking & Trust Corp.,* 159 Md.App. 620, 632 n. 2, 861 A.2d 735 (2004); *Baltimore Harbor Charters, Ltd. v. Ayd,* 134 Md.App. 188, 199, 759 A.2d 1091 (2000), *vacated in part on other grounds,* 365 Md. 366, 780 A.2d 303 (2001); *Owens–Corning v. Walatka,* 125 Md.App. 313, 337, 725 A.2d 579 (1999), *abrogated on other grounds by John Crane, Inc. v. Scribner,* 369 Md. 369, 800 A.2d 727 (2002); *Fraidin v. Weitzman,* 93 Md.App. 168, 209, 611 A.2d 1046 (1992); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.,* 88 Md.App. 672, 716, 596 A.2d 687 (1991).

In *Brawner v. Hooper,* 151 Md. 579, 135 A. 420 (1926), the Court of Appeals held that the trial court erred when it granted the defendant's motion for remittitur on the condition that the defendant waive his right to appeal. With respect to the remittitur, the Court stated:

[T]he trial court judicially determined that the verdict of the jury was grossly excessive, and it granted a new trial for that reason unless the appellee remitted the excess. In doing that it unquestionably was acting within its jurisdiction.... If the sum of $2500 was full and adequate compensation for the plaintiff's injuries, manifestly the court had no authority to compel the defendant to pay her $2500 more than that because he failed in his effort to show that she was not entitled to recover at all. Whether the court did or did not err in the trial of the case had nothing to do with what would fairly compensate the plaintiff for her injuries and losses.

*Id.* at 595, 135 A. 420. In its opinion, the Court quoted favorably the Supreme Court of South Carolina:

"Hence when, in the exercise of his judgment and discretion, the circuit judge makes an order that a new trial should be granted unless the plaintiff remits so many dollars from the verdict, *that is an adjudication that the verdict is by that amount clearly excessive,* and that the defendant is of legal right entitled to be relieved from that excess or have a new trial."

*Id.* at 595–96, 135 A. 420 (quoting *Hall v. N.W. R. Co. of South Carolina,* 81 S.C. 522, 62 S.E. 848, 853 (1908)) (emphasis added).

This Court has held that a trial court did not abuse its discretion when it required the remittitur of the jury's entire damages award for an unjust enrichment claim. *Ayd,* 134 Md.App. 188, 759 A.2d 1091. In *Ayd* we stated:

It is not necessary that the trial court's view of the verdict be the *only* rational view.... In this case, the trial court's decision represented a fair and reasonable assessment of the verdict—as a verdict that was excessive because the

jury got confused and duplicated the award for breach of contract damages as an award for unjust enrichment. We cannot say that the trial court abused its discretion in granting a remittitur for the unjust enrichment award. *Id.* at 201–202, 759 A.2d 1091. Moreover, we determined that "we do not think it was an abuse of the trial court's discretion" for the court to require the plaintiff to remit the amount of breach of contract damages that he was paid under the contract, even though that amount was disputed. *Id.* at 203, 759 A.2d 1091. We concluded that, "[i]n light of the evidence, the trial court's decision ... was logical and reasonable." *Id.* at 204, 759 A.2d 1091.

We also have held that "trial judges are [not] barred from considering the proportional relationship between personal injury damages and consortium damages in granting a remittitur motion." *Owens–Illinois, Inc. v. Hunter,* 162 Md.App. 385, 416, 875 A.2d 157 (2005), *cert. denied* 388 Md. 674, 882 A.2d 287 (2005).[2]

---

**2.** With respect to punitive damages, we noted in *Alexander & Alexander, Inc.,* 88 Md.App. at 715, 596 A.2d 687, that the Court of Appeals had not "promulgated a self-contained laundry list of standards" to guide the jury in determining the proper amount of punitive damages. Nevertheless, we determined that the Court had, "in different cases, articulated principles" that the jury should consider in awarding punitive damages. *Id.* In discussing the "broad discretion" afforded circuit courts "to review jury verdicts for excessiveness," we stated:

In determining whether a punitive award is excessive to the point of directing a remission or a new trial in lieu thereof, the trial judge necessarily must apply the same principles, noted above, available to guide the jury. Essentially, this comes down to whether the award, by reason of its amount, fails to serve its proper purpose. This discretionary review, tempered by those standards, "provides an additional check on the jury's ... discretion" and does measurably help to assure that the award does not exceed "an amount that will accomplish society's goals of punishment and deterrence."

*Id.* at 716–17, 596 A.2d 687 (quoting *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 20–21, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)).

In *Bowden v. Caldor, Inc.,* 350 Md. 4, 25–26, 710 A.2d 267 (1998), the Court of Appeals set forth nine general "legal principles or considerations which should guide a trial court in determining if a punitive damages award is excessive and, if it is held to be excessive, the extent of the reduction." The Court noted, however: "[N]ot all of the above-summarized principles or factors are pertinent in every case involving

Moreover, as discussed *supra*, "[t]he granting or denial of ... a motion for remittitur is within the discretion of the trial court." *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 449, 601 A.2d 633 (1992). In *Owens Corning v. Bauman,* 125 Md.App. 454, 523, 726 A.2d 745 (1999), *abrogated on other grounds by John Crane, Inc. v. Scribner,* 369 Md. 369, 800 A.2d 727 (2002), we addressed whether a non-economic damages award was "excessive as a matter of law" to determine whether "the trial court abused its discretion by failing to reduce the award." After comparing the verdict to other similar cases and reviewing the evidence before the jury, we concluded:

> We are satisfied that the court considered the claim of excessiveness on its merits. Furthermore, the court demonstrated that it applied the appropriate standard in its determination by stating that, "[b]ased on this evidence, with the fullest consideration possible given to the amount returned by the jury, this court believes the verdict was not excessive in and of itself." The court examined the evidence and did not abuse its discretion by determining that the jury's award was not excessive.

*Id.* 526, 726 A.2d 745.

We think that, as a natural corollary to its discretion to find that a verdict is excessive, a Maryland trial court has equally broad discretion in its determination of the amount of an appropriate remittitur that will ensure that the award is a "full and adequate compensation for the plaintiff's injuries," *Brawner,* 151 Md. at 595, 135 A. 420, after "lopping off" the excess amount of the jury's verdict. *Dimick,* 293 U.S. at 486, 55 S.Ct. 296.

Moreover, the determination of an appropriate amount is neither the product of a precise formula, nor a detailed checklist of considerations. Rather, the trial court, in making its determination, must make a fair and reasonable assess-

---

court review of punitive damages awards. Furthermore, the above list is not intended to be exclusive or all-encompassing. Other principles may appropriately be applicable to judicial review of punitive damages awards under particular circumstances." *Id.* at 41, 710 A.2d 267.

ment of the evidence it has seen and heard during the trial and determine the highest amount that a reasonable jury would award to fairly compensate a plaintiff for his or her loss based on that evidence. In a personal injury claim involving non-economic damages, the court, like the jury, must consider: (1) the extent and duration of the injuries sustained; (2) their effect on the overall physical and mental health and well-being of the plaintiff; and (3) the physical pain and mental anguish suffered in the past and which may reasonably be experienced in the future. *See* MPJI–Cv 10:2. But, because of the deference to be accorded to the jury's verdict, the trial court does not make an independent determination of what it would have awarded had it been the fact finder. Instead, it only determines the amount at which it finds the award no longer excessive.

We believe that it goes without saying that, to determine that amount, the trial court necessarily brings to its analysis, as the court in *Fertile* stated, "its own common knowledge, as well as its experience with other injury verdicts." [3] *Fertile*, 169 N.J. at 501, 779 A.2d 1078. It is that common knowledge and experience, coupled with having heard and seen the evidence presented at trial, that is the foundation for the trial court's exercise of discretion. Therefore, we believe the trial court reached the same result that it would have reached had it had the benefit of *Fertile*.

■■■ After hearing thorough arguments from counsel on the issue, the circuit court noted the difficulty in determining "at what point one goes from not being surprised to being shocked." In making its determination, the court stated that it had taken the jury's verdict into account and assessed the evidence in the case. Based on those considerations, the court obviously concluded that, whereas an award of $515,000 in non-economic damages is excessive, $300,000 is not. "It is not necessary that the trial court's view of the verdict be the *only*

---

**3.** That does not mean, as appellant appears to argue, that "other jury verdicts" are necessarily limited to verdicts reached by juries presided over by that individual judge or by a particular circuit court.

rational view." *Ayd,* 134 Md.App. at 201, 759 A.2d 1091. Rather, a trial court abuses its discretion in this area only if its decision is " 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.' " *Id.* (quoting *Rolley v. Sanford,* 126 Md.App. 124, 131, 727 A.2d 444 (1999)). We are not persuaded that the court abused its discretion in this case.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID½ BY APPELLANT/CROSS–AP-PELLEE AND ½ BY APPELLEE/CROSS–APPELLANT.**